Eric STEGEMANN,
Appellant-Respondent,

v.

William FAUK et al.,
Respondents-Appellants.

Nos. 38522, 38543.

Missouri Court of Appeals,
St. Louis District,
Division Four.

Aug. 8, 1978.

London & Greenberg, Burton M. Greenberg, St. Louis, Paul B. Rava, Richard D. Watters, Lashly, Caruthers, Thies, Rava & Hamel, St. Louis, for appellant-respondent.

Thomas W. Wehrle, County Counselor, Vernon Kelly, Clayton, William O'Herin, St. Louis, for respondents-appellants.

DOWD, Presiding Judge.

A case of expungement of marriage records.

Plaintiff Eric Stegemann, and defendant Christl Kubitschek Stegemann (hereinafter referred to as Eric and Christl) both have appealed from the judgment rendered by the Circuit Court of the County of St. Louis.

The suit was initiated in equity by Eric to expunge particular marriage records which were in the custody of the St. Louis Recorder of Deeds. These records contained the representation that Eric and Christl were married on August 11, 1969. Eric has denied his participation in this marriage ceremony. Eric married a woman in October, 1970.

Named as defendants in the lawsuit were William Fauk, the Recorder of Deeds of St. Louis County, and Christl, the alleged supplier of the information which Eric claims to be false.

Christl, a resident of West Germany, responded to the suit by filing a two count counterclaim. Count I alleged that she married Eric on August 11, 1969, that a child was born on November 16, 1969 as a result of their pre-marital union, and that the marriage was irretrievably broken. The prayer sought dissolution, maintenance, child custody, child support, and attorneys fees. Count II of the counterclaim asserted that if the court did not find a marriage to exist, Eric should be directed to pay for past and future support of the issue of the union. In addition, the prayer sought a declaration of paternity, together with an order that Eric provide the requested support, and attorneys fees.

Two juries consisting of 8 members each were empaneled to serve the court in an

advisory capacity. The issues were framed by the court in the following terms: was there a marriage, and was there a child born of the union of these two people.

On the issue of the existence of a marriage, Eric offered the testimony of Donald and Carol George, who were witnesses at the wedding on August 11, 1969. Donald George admitted that he vaguely recalled the groom's appearance, and that recollection did not coincide with Eric's traits. George further testified that he would not be able to identify the groom of August 11, 1969 in a lineup. Carol George, who was acquainted with Christl before the alleged wedding, agreed with her husband that Eric looked different from the man who married Christl six years before, but acknowledged that her memory was not vivid.

The judge who performed the ceremony testified that his records indicated that Christl had married Eric, but that identification was not required of the parties. Due to lapse of time and the quantity of couples for whom the judge had performed ceremonies, he was unable to recognize either Eric or Christl. Eric testified that he met Christl in November of 1968, and that he became intimate with her in January of 1969. When she later informed him that she was pregnant, he advised her that he would not marry her because he did not love her. Although he suspected that Christl could have been impregnated by another man, he told her that if the child was his he would take care of it.

When congratulated on his marriage by members of the community Eric commenced a search of the records filed with the St. Louis Recorder of Deeds to discover the cause. His search produced a marriage license application which contained Christl's signature as well as an alleged forgery of his signature. Upon this discovery Eric wrote to the Metternick, Germany, police to protest Christl's use of his name, claiming no marriage had taken place.

Eric produced a handwriting expert who compared Eric's signature on checks with the signature on the marriage license application. The expert testified that there were stylistic discrepancies which indicated that Eric's signature had been imitated.

Christl testified that she and Eric were married for the sole purpose of legitimizing their unborn child. Neither cohabitation nor conjugal relations characterized the marriage. It was the intent of the parties that a divorce would be sought after three months.

On the paternity issue, Christl testified that she had ceased being intimate with one Newman, with whom she had previously resided, before she became sexually involved with Eric. She claimed that Eric alone had access to her within the critical stage in February when she became pregnant.

Blood tests were conducted and revealed that Christl had type B blood, Eric had type AB blood, and Antonia, the child, had type A blood. On the basis of the scientific tests which were conducted, Dr. Levy concluded that Eric could not be excluded from the realm of biologically possible fathers.

The transcript also indicated that Newman, a previous paramour of Christl, had type B blood. In the course of Dr. Levy's explanation of the tests, he stated that on routine testing, a person having type B blood, uniting with another having type B blood, could not produce a child having type A blood.

The two advisory juries were submitted the following interrogatories: Do you believe that it is more probably true than not true that Eric did not marry Christl on August 11, 1969? Do you believe that it is more probably true than not true that Antonia is the natural born child of Eric Stegemann? (If six or more were unable to agree in their answer to # 1, then: Do you believe it is more probably true than not true that Antonia is not the natural born child of Eric?)

Six of eight members of one advisory jury answered yes to the first interrogatory, and seven of those eight members answered yes to the second interrogatory. The other jury was evenly split on the first interrogatory, seven of those eight also an-

swered yes to the second interrogatory, and lastly, seven answered no to the third interrogatory.

In a scholarly opinion, the trial judge held that neither Christl nor Eric had sustained their burden of proving the existence or nonexistence of a marriage. After balancing the equities, the court concluded that the marriage was not *matrimonium verum*, but void. The effect of such a conclusion is that the marriage records should be expunged, Antonia is the legitimate child of Christl and Eric, and that Eric's later marriage was valid and not bigamous. Custody was awarded to Christl, and Eric was directed to pay a portion of Christl's "lying-in expenses" at birth of child as well as $130 a month for child support. The court further ordered that Eric pay: $750 for attorney fees incurred by Christl in the prosecution of Count I of her counterclaim and $100 for litigation expenses, $850 for attorneys fees incurred by Christl in the prosecution of Count II of her counterclaim, in addition to $600 for her traveling expenses, and $800 for attorneys fees and $125 for litigation expenses incident to Christl's defense of Eric's expungement claim.

Eric's appeal from this judgment is predicated on the contention that the trial court erred in the following respects: there was substantial evidence that Eric did not participate with Christl in a marriage ceremony; there was no substantial evidence to support a finding that Eric was the father of Christl's child; it was an abuse of discretion to award attorneys fees, litigation expenses and travel expenses to Christl; and the denial of Eric's motion for a continuance during the trial was arbitrary, capricious and an abuse of discretion.

Christl's appeal from this judgment is predicated on the contention that the award of attorneys fees for Christl's defense of the expungement claim was insufficient, and that failure to award Christl's daughter attorneys fees in the paternity action was error.

In review of a court tried case, "we are required to affirm the judgment below unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *In re Marriage of Carmack*, 550 S.W.2d 815, 817 (Mo.App. 1977), *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "Such a review is not, however, a trial de novo in which we assess the evidence." *City of Perryville v. Brewer*, 557 S.W.2d 457, 463 (Mo.App. 1977).

■ Eric contends that there was substantial evidence that the alleged marriage ceremony did not take place. The fact that there is evidence in the record which might have supported a different conclusion, however, does not demonstrate that the decree is contrary to the weight of the evidence. *Roark v. Harvey*, 544 S.W.2d 287, 291 (Mo. App. 1976).

■ Section 451.110 RSMo 1939 provides that a marriage license is prima facie evidence of the facts stated therein. The following review will demonstrate that neither party produced evidence sufficient to dispute the contents of the marriage license.

The transcript reveals that neither the judge who officiated at the ceremony nor the parties who witnessed the marriage, could clearly remember the groom's appearance. Apparently, the handwriting expert's testimony that Eric's signature could have been either forged or disguised did not pose a formidable challenge to the validity of the signature. The trial court concluded that the evidence introduced to disprove the occurrence of the marriage was not "clear, cogent, or convincing". These facts, coupled with the court's observation that "Christl's conduct is much more consistent and there is a certain ring of truth in much that she had to say", have persuaded us that the judgment of the trial court is supported by substantial evidence. On the basis of the foregoing, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses appearing before it, we affirm the court's finding as to the marriage issue. Rule 73.01(3).

■ We are also satisfied that the trial court's finding regarding Eric's paternity is supported by substantial evidence. The testimony disclosed that Eric had sexual relations with Christl during the months in

which she conceived. Furthermore, the blood test results indicated that Eric was within the realm of biologically possible fathers. This latter fact, combined with the finding that Christl's former paramour could be excluded from consideration due to his blood type, lends further support to the trial court's judgment.

■ Eric next contends that it was necessary for Christl to present substantial evidence that no copulation occurred or was possible between her and anyone else during the conception period. However, "it is not ordinarily incumbent on the [prosecutrix] to introduce affirmative evidence that no one else [is] the father [of her child.]" 10 C.J.S. Bastards § 81, p. 170.

■ Eric has invited this court to reexamine the burden of proof required in a paternity suit. At present, a prosecutrix, unaided by the presumption of legitimacy afforded by marriage, must prove paternity by a preponderance of the evidence. *S.J.B. v. S.F.S.*, 504 S.W.2d 233, 234 (Mo.App. 1973). Christl's burden, as defined by the court below, was to "induce belief in the court's mind above and beyond evidence more worthy of belief than that offered in opposition thereto." Eric has suggested that a clear and convincing standard, such as that required to rebut the presumption of legitimacy, should be applied in paternity actions. It is not for this court to amplify the burden of proof to the level of a presumption which has been described "as one of the strongest rebuttable presumptions known to the law". 10 Am.Jur.2d, § 11, p. 852.

Eric's third claim of error concerns the trial court's award of attorneys fees, and litigation expenses on the dissolution action to Christl. Christl has cross appealed, contending that the trial court's award did not sufficiently cover the fees incurred in defending against Eric's expungement claim and litigating the paternity action.

Section 452.355, RSMo 1969 provides: "The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount . . . for attorney's fees . . . ."

■ In a dissolution of marriage proceeding, the award of attorneys fees is in the discretion of the trial court and we review only for abuse of discretion. *Seelig v. Seelig*, 540 S.W.2d 142, 147 (Mo.App. 1976).

Prior to making the partial award, the trial court studied the financial situations of both parties, inter alia. The study revealed that Christl had a modest job and owned a small piece of rental property and that Eric's earning potential was a present asset of substantial value. Accordingly, the award was supported by the evidence, and was well within the discretion of the trial court.

■ On the basis of the findings regarding the financial situation of both parties, Christl contends the failure to award her full attorneys fees was error. We affirm this award, for § 452.355, RSMo 1974 "by its terms . . . does not entitle a party to *full* costs and attorneys fees, but to reasonable amounts considering the relative financial condition of both parties." (Emphasis added) *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 859 (Mo.App. En Banc 1977).

■ Her second contention on appeal is that the court erred in not awarding full attorneys fees to Antonia for the litigation of the paternity claim. As noted in the trial court's opinion, there is no statutory authority in Missouri for the allowance of attorney fees in paternity suits. A partial allowance was made herein under the auspice of the court's power to exercise equitable jurisdiction to care and provide for the minor child. *Urbaneck v. Urbaneck*, 503 S.W.2d 434, 441 (Mo.App. 1973). As this jurisdiction was properly invoked and exercised, the award is affirmed.

■ As a final matter, Eric contends the court erred in denying his motion for a continuance. The transcript discloses that the motion was made during the trial in the hope of securing the testimony of additional witnesses. The motion was denied because the accompanying affidavit did not comply with Rule 65.04, and because the delay would work a serious inconvenience to Christl who was scheduled to return to Germany.

The granting of a continuance is largely within the discretion of the trial court and every intendment on appeal is in favor of the court's ruling. *Hammack v. White*, 464 S.W.2d 520, 523 (Mo.App. 1971).

Considering the record before us, and the fact that the motion lacked the requisite allegations, the overruling of the application for a continuance cannot be considered an abuse of discretion. *Matter of Estate of Anderson*, 544 S.W.2d 35, 41 (Mo.App. 1976), *Searles v. Searles*, 495 S.W.2d 759, 766 (Mo. App. 1973).

After carefully reviewing the record, we are convinced that the trial judge had a most difficult case with many complicated issues which involved conflicting equitable interests. The resolution of these issues by the trial judge required Solomon-type wisdom. The issues were resolved on a just and legal basis.

The judgment is affirmed.

SNYDER, J., and ALDEN A. STOCKARD, Special Judge, concur.