**In re the MARRIAGE of B.———,**
**Petitioner-Respondent,**

**and**

**B.———, Respondent-Appellant.**

No. 11832.

Missouri Court of Appeals,
Southern District,
Division Two.

June 29, 1981.

Dale H. Close, Richland, for respondent-appellant.

Wm. C. Morgan, Waynesville, for petitioner-respondent.

MAUS, Chief Judge.

The points raised on this appeal from a dissolution decree involve the paternity of a child. A summary of the evidence on that issue follows. The parties were married in 1977. With several periods of separation, the parties lived together until August 10, 1979. The child was born January 6, 1980. The trial court was requested to and did take judicial notice the normal gestation period is 280 days and that 280 days prior to the date of birth was April 2, 1979.

The husband was injured and hospitalized in February, 1979. When he was released he went to the home of his parents. The wife admitted that when the husband was hospitalized she told him she had had sexual relations with a named individual, but said that in fact she had not done so. She further admitted that starting near the end of February or beginning of March, 1979, she commenced having sexual relations with a second named individual. Those relations continued off and on and the wife started living with him in September, 1979, and continued to do so to the time of trial. The second individual testified he had had a vasectomy in 1975.

The wife testified that she had sexual relations with her husband at his parents' home in the early part of April, 1979, following which they resumed living together. She menstruated the first part of April, 1979, and thereafter had sexual relations with no one but her husband before May 15, 1979, when the doctor confirmed the fact she was pregnant with the child in question. Her testimony was circumstantially corroborated by her sister.

On the other hand, the husband testified that after his hospitalization he first had sexual relations with the wife between May 4 and 8, 1979. On May 9 or 10, 1979, he learned his wife was pregnant. His testimony was circumstantially corroborated by his mother. The trial court found the child to have been born to the marriage and awarded custody and child support to the wife. The husband appeals.

■ The husband first contends the trial court erred in finding the child to be a child of the marriage because he overcame the presumption of legitimacy and the wife did not meet her burden of proof in establishing the child was legitimate. There is, of course, an evidentiary, rebuttable presumption of legitimacy. In *In re L____*, 499 S.W.2d 490, 492 (Mo. banc 1973) it was held that when substantial evidence "('clear, cogent and convincing proof')" to the contrary is introduced, the presumption disappears and the case is to be determined as if no presumption had ever been operative in the case. However, whether or not the husband introduced sufficient evidence, considered by itself, to overcome the presumption is not decisive. The wife did not rely solely upon the presumption. She introduced evidence, conflicting with the evidence of the husband, to establish the legitimacy of the child. It was for the trial court to consider the evidence and determine the issue.

■ The husband argues that as the trial court took judicial notice of a normal gestation period of 280 days, the trial court erred because the wife did not prove intercourse on April 2, 1979. It is judicially noticed that the normal period of gestation is 280 days, but notice may also be taken that not every period of gestation is precisely 280 days. *Rasco v. Rasco*, 447 S.W.2d 10 (Mo.App. 1969); *F____ v. F____*, 333 S.W.2d 320 (Mo.App. 1960). The testimony of the wife that following her menstrual period, in the first part of April until after her pregnancy was confirmed, she engaged in intercourse only with her husband, if believed by the trial court, is evidence from which the trial court could have reasonably found the husband was the father. *S____ J____ B____ v. S____ F____ S____*, 504 S.W.2d 233 (Mo.App. 1973), cited by the appellant does not hold otherwise. In the review of this case this court is to give due regard to the trial court's unique opportunity to assess the credibility of the witnesses. *Gillespie v. Gillespie*, 590 S.W.2d 420 (Mo.App. 1979); *Estate of Sheets v. Sheets*, 558 S.W.2d 291 (Mo.App. 1977). This court has no firm belief the trial court's determination of legitimacy was wrong and the point is denied. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

The husband seeks a remand for a new trial because the trial court did not appoint a guardian ad litem for the child. He relies upon *S____ v. S____*, 595 S.W.2d 357, 363 (Mo.App. 1980), in which the court said "that in any case where, by pleading or evidence, the paternity of a child becomes an issue, the trial court shall appoint a guardian ad litem in all future cases."

■ That opinion was handed down before but was not published until after the trial of this case. The husband first requested such an appointment after trial and while the court had the case under advisement. He did not at that time suggest any purpose to be served by a guardian ad litem. He does not now suggest how the child was prejudiced except to speculate that it might be in the best interests of the child to be declared the illegitimate child of the man with whom the wife was living. The child is not bound by the determination made in this action. *S____ v. S____*, supra. The rule announced in *S____ v. S____* is for the benefit of the child, not one of the parties to the marriage. The failure of the court to appoint a guardian ad litem did not deprive the court of jurisdiction. Without expressly adopting or rejecting that rule, under the circumstances of this case the father is not entitled to have the case reversed for the appointment of a guardian ad litem for the apparent purpose of assisting in declaring the child illegitimate.

■ The husband's last point is that the trial court erred in not considering the income of the man with whom the wife was living. He cites *Bishop v. Missouri State Div. of Family Serv.*, 592 S.W.2d 734 (Mo. banc 1979) in which the court construed § 453.400, RSMo 1978, dealing with the duty of a stepparent to support a stepchild living in the home. The man living with the wife in a meretricious relationship is not a stepparent. Even if he was, § 453.400 provides in part:

[N]othing in this section shall be construed as abrogating or in any way diminishing the duty a parent otherwise would have to provide child support, and no court shall consider the income of a stepparent, or the amount actually provided for a stepchild by a stepparent, in determining the amount of child support to be paid by a natural or adoptive parent. § 453.400.

This point is denied. The judgment of the trial court is affirmed.

PREWITT, P. J., and HOGAN and BILLINGS, JJ., concur.