Adam Wesley ROBINETT and Mary K. Huff, Plaintiffs–Respondents and Cross–Appellants,

v.

Wade V. ROBINETT, Defendant–Appellant and Cross–Respondent.

No. WD 40540.

Missouri Court of Appeals, Western District.

March 21, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 1989.

Application to Transfer Denied June 13, 1989.

Thomas B. Sullivan and A. Morgan Hickenlooper (argued), Kansas City, for Wade V. Robinett.

David E. Martin, Independence, guardian ad litem for Adam Wesley Robinett.

John K. Allinder, Independence, for Mary Huff.

Before NUGENT, P.J., and SHANGLER and CLARK, JJ.

NUGENT, Presiding Judge.

Defendant Wade Robinett appeals from the trial court's order finding that he is the father of plaintiff Adam Wesley Robinett, (Adam). Plaintiff Mary Huff cross-appeals from the court's order denying her compensation for the expenses she has incurred for Adam's support and birth and denying her attorney fees.

Defendant Robinett argues on appeal that no substantial evidence supports the trial court's conclusion that he is the father of the child born to plaintiff Huff and that the court erred in placing on him the burden of proving his sterility at the time of conception. Plaintiff Huff argues in her cross-appeal that the court abused its discretion in failing to award her damages for past expenses or for attorney's fees. We affirm in part and reverse in part.

■ We review the decision in this court-tried case under the principles announced in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.1976) (en banc). Accordingly, we will reverse the trial court's decision only if no substantial evidence supports it, it is against the weight of the evidence, erroneously declares the law or erroneously applies the law. *Id.* We will, however, give substantial deference to the trial court's ability to hear the evidence and determine the credibility of witnesses. *N.R. v. A.D.,* 691 S.W.2d 350 (Mo.App.1985).

Ms. Huff, a flight attendant, began seeing Dr. Robinett, a physician, in August, 1982. Their sexual relationship began about one month later. By Dr. Robinett's account, it continued until February, 1984, and, by Ms. Huff's account, until mid-March of 1984. Ms. Huff had been visiting a sister in Texas in late February of that year when she contracted chicken pox. The defendant testified that their sexual relationship ended before Ms. Huff went to Texas. She testified, however, that she spent the first two weeks of March, her period of recuperation from chicken pox, at Dr. Robinett's apartment. During that time the couple engaged in sexual intercourse. A prescription on Dr. Robinett's form, dated March 1, 1984, was presented in evidence. Although the prescription was made out to "Mrs. Robinett", Ms. Huff testified that the defendant had written it for her use.

Ms. Huff confirmed her pregnancy on March 29, 1984. At that time, her gynecologist estimated that she was five weeks pregnant. According to that estimate, conception would have occurred on February 24 while Ms. Huff was in Texas. She testified, however, that her menstrual period occurred during her Texas visit and that she had calculated that her ovulation should occur in the first week of March. She denied having engaged in sexual relations with anyone other than Dr. Robinett during the year before or during her pregnancy. Adam arrived on November 26, 1984.

Ms. Huff notified the defendant of her impending motherhood on April 1, 1984. In later discussions about the pregnancy, Dr. Robinett advised her that he had been exposed to radiation several years ago and that he feared the effects that the radiation might have on any of his offspring. He advised her to have an abortion and offered to help her be artificially inseminated if she wanted a child.

The plaintiff's propounded interrogatories to the defendant elicited the following answers:

23. Are you sterile? ....

ANSWER: Unknown at this time.

24. Do you now claim that you are sterile or for any other reason could not be the father of Adam Wesley Robinett?

ANSWER: I do not believe we had sexual relations within 9 months of the birth of the child. Sterility is unknown.

The defendant gave those answers on April 3, 1986. Later, on July 14, 1987, he submitted amended answers to the above interrogatories, stating that he is sterile and was sterile in 1984 when Adam was conceived. He based that conclusion on his having undergone a vasectomy in 1968 or 1969 and on a semen analysis performed in 1987 by Dr. Henry Habib.

Dr. Robinett presented Dr. Habib's deposition at trial. Dr. Habib testified that he determined from his examination of the defendant that the vasectomy scars were at least ten years old. Dr. Mark Noble, at the guardian ad litem's request, conducted an examination of Dr. Robinett. Dr. Noble reported that the vasectomy scars were at least one year old. He stated, however, that because scars change very little after one year, visual examination of the scars could not determine precisely whether the scars were more than one year old.

Dr. Robinett produced no medical records documenting the vasectomy. He testified that while he was in medical school in New York as a professional courtesy a Dr. Daugherty had performed the operation without charging a fee and that no record had been made of it. He explained that he has sired four children by his former wife before his vasectomy and that he feared that his exposure to radiation would endanger any further offspring. Dr. Robinett could not remember Dr. Daugherty's first name nor the spelling of his last name. The guardian ad litem unsuccessfully attempted to find the doctor who had performed the vasectomy.

Malcom Beck, an immunohematologist, testified for the plaintiffs. He had performed blood tests on Ms. Huff, Adam, and Dr. Robinett. From his genetic analysis of those samples he determined that a 241–to–

one or a 99.56% probability existed that Dr. Robinett is Adam's father. He admitted on cross-examination that he based that probability on the assumption that the defendant was fertile at the time of conception.

The trial court found that the parties' sexual relationship continued beyond March 1, 1984; that the paternity tests indicated that it is "extremely likely" that Wade Robinett is the natural father of Adam Robinett; and that the defendant was not sterile at the time of Adam's conception. The court concluded that Dr. Robinett is Adam's natural father.

Following its finding of paternity, the court conducted a separate hearing on the issues of compensation for Ms. Huff's past child support expenses and prospective child support. Ms. Huff and Dr. Robinett both submitted reports of their income and expenses. Ms. Huff based her claim for past expenses on her estimate of the average amounts she had spent for food, clothing, medical, and child care expenses for Adam. She testified that she had paid cash for many of her purchases. She was, therefore, unable to present documentation to support her claims for expenses. The defendant's cross-examination of Ms. Huff revealed that she had received cash for many of the cancelled checks that she presented in support of her expense claims. She explained that she spent the cash from those checks for Adam's expenses.

Dr. Robinett testified that he owned 100% of a medical corporation from which he received a salary. He explained that his salary had declined because the corporation's net income had declined. His expenses included court-ordered payment of college fees for his two youngest daughters. He testified that his investments outside of his medical practice produced a net loss in income. His salary for the years 1984, 1985, 1986 and 1987, respectively, amounted to $75,075, $75,075, $60,179, and $46,470.

The court ordered Dr. Robinett to pay monthly child support payments of $600.00, beginning April 1, 1988. It denied Ms. Huff's claims for past expenses and for attorney fees. Defendant Robinett appeals

from the court's finding of paternity and plaintiff Huff cross-appeals from the court's denial of past expenses and attorney fees.

The defendant argues on appeal that the trial court abused its discretion in finding that he is the father of the plaintiff child. The alleged defects in the court's judgment include the absence of any evidence showing the defendant's fertility; the inconsistency between the calculated time of conception and Dr. Robinett's access to Ms. Huff; and the court's reliance on the testimony of the plaintiff's expert witnesses and on the findings of the guardian ad litem. As a corollary to that argument the defendant asserts that the court erred by requiring him to prove sterility as an affirmative defense.

Dr. Robinett testified that he had undergone a vasectomy some fifteen years before Adam's conception. He presented Dr. Habib's expert testimony that he is sterile and that his vasectomy scars were at least ten years old at the time of his trial. He argues that, in light of that evidence, the plaintiff's failure to present affirmative evidence of his fertility amounted to a failure to meet her burden of proof.

■ The defendant correctly asserts that the burden of proof in a paternity action rests on the party seeking to establish paternity. *See Stegemann v. Fauk,* 571 S.W. 2d 697, 701 (Mo.App.1978).

■ Defendant also correctly contends that sterility does not constitute an affirmative defense that must be pleaded in the answer or lost:

An affirmative defense contemplates additional facts not included in the allegations necessary to support plaintiff's case and avers that plaintiff's theory of liability, even though sustained by the evidence, does not lead to recovery because the affirmative defense allows the defendant to avoid legal responsibility.... Any evidence which tends to show [that] plaintiff's cause never had legal existence is admissible on a general denial even though the facts are affirmative, if and insofar as they are adduced only to negative the plaintiff's cause of action and are not by way of confession and avoidance.

*Parker v. Pine,* 617 S.W.2d 536, 542 (Mo. App.1981) (citations omitted) (evidence that the plaintiff benefited from trustees' actions need not be pleaded in suit for breach of fiduciary duty); *see also World Enterprises, Inc. v. Midcoast Aviation Services, Inc.,* 713 S.W.2d 606, 608–09 (Mo.App.1986) (limitation of liability contract clause need not be pleaded as an affirmative defense in a breach of contract action). Under that test, the defendant's allegation of sterility at the time of conception, if believed, would clearly show, if established, that the plaintiff's cause of action never existed. Therefore, we hold that sterility is not an affirmative defense that must be pleaded in an answer to a paternity suit.[1]

■ Nevertheless, we find that the evidence supported the trial court's finding of paternity. Ms. Huff's testimony that she engaged in sexual intercourse with Dr. Robinett in early March, that she became pregnant, and that she copulated with no other man during the time before or after learning of her pregnancy created the inference that the defendant was fertile at the time of conception. As the trier of fact, the trial court was in the best position to judge her credibility, and it chose to believe her. *See JD v. MD,* 453 S.W.2d 661, 666 (Mo.App.1970) (appellate court will not disturb judgment when the trial court believed that the plaintiff copulated with the defendant and no other). By making that choice, the trial court obviously disbelieved the testimony of the defendant and his expert witness. The trial court may

1. This holding need not create the possibility of unfair surprise to a plaintiff in a paternity action. The fertility of the putative father is relevant to the suit, and is, therefore, subject to discovery. *See* Rule 56.01(b)(1). Failure to comply with discovery requests may result in sanctions against the non-compliant party. Rule 61.01. The plaintiff did not request sanctions for the defendant's incomplete answers to her interrogatories, so we need not consider that issue. Suffice it to say that the trial court properly considered the defendant's evasive answers when it assessed his credibility.

choose to believe or disbelieve any testimony, and we will defer to that choice. *Corzine v. Stoff*, 505 S.W.2d 162, 165 (Mo.App. 1973).

■ The defendant also seeks to undermine Ms. Huff's credibility by presenting calculations that would tend to show that conception occurred in February. Her gynecologist's estimate that Ms. Huff was five weeks pregnant on March 29 would place the date of conception at February 24 when she was in Texas. A 280–day gestational period would place conception on February 21. Courts will take judicial notice of the normal 280–day gestational period and the party having the burden of proof must present evidence to support a finding of a shorter or longer gestational period. *SJB v. SFS*, 504 S.W.2d 233, 236 (Mo.App.1973). Here, the plaintiff testified that her menstrual period occurred after the above dates and that she calculated that her ovulation would occur in early March. That testimony, which the trial court was entitled to believe, provided sufficient evidence to support the court's finding that conception occurred in March. *See In re Marriage of B.*, 619 S.W.2d 91, 93 (Mo.App.1981) (calculating length of gestation in relation to date of last menstrual period).

■ The defendant also argues that the trial court gave too much weight to the testimony of the plaintiff's expert witness. Mr. Beck testified that he based his finding of a 241–to–one probability in favor of paternity on the assumption that the defendant was fertile at the time of conception. Such testimony, Dr. Robinett contends, amounts to mere speculation in light of his evidence of sterility. Clearly, scientific evidence is but one of the factors to consider in determining paternity. *Imms v. Clarke*, 654 S.W.2d 281, 287 (Mo.App.1983). The trial court also considered the testimony of the parties and chose to believe the plaintiff. Its finding that the defendant was not sterile in March of 1984 lends weight to Mr. Beck's testimony. The trial court properly considered it.

Finally, the defendant challenges the court's reliance on Dr. Noble's report and on the testimony of the guardian ad litem. The parties stipulated to the admission of Dr. Noble's report. He concluded that the vasectomy scars were at least one year old. He stated, however, that because scars change very little after one year, visual examination could not determine whether the scars were eighteen months old or fifteen years old. The guardian ad litem testified that his search for Dr. Daugherty, the doctor who allegedly performed the vasectomy, produced no results. The defendant argues that neither the report nor the testimony carried any probative value on the issue of paternity, and that, therefore, neither was admissible.

■ We disagree. The evidence served to impeach the credibility of the defendant and his expert. *See Roberts v. Emerson Electric Manufacturing Company*, 362 S.W.2d 579, 584 (Mo.1962) (evidence tending to throw light on a witness' accuracy or credibility is proper impeachment evidence). Dr. Noble's report placed in doubt Dr. Habib's testimony that the vasectomy scars were at least ten years old. The guardian's testimony impeached Dr. Robinett's explanation of the circumstances surrounding his vasectomy. Moreover, the trial court has broad discretion in admitting evidence in a court tried case. *Lee v. Rolla Speedway, Inc.*, 539 S.W.2d 627, 632 (Mo. App.1976). Here, we find no abuse of that discretion.

■ In her cross-appeal Ms. Huff argues that the trial court abused its discretion in failing to award her compensation for the expenses she incurred over the past three years for Adam's support, and for the attorney fees she incurred seeking to establish his paternity. Before reaching the merits of the plaintiff's cross-appeal, we will respond to the defendant's contention that we should dismiss the cross-appeal because of the plaintiff's failure to comply with Rule 84.04. Her points on appeal violate the rule because they fail to set forth the "wherein and why" of the trial court's alleged errors.

■ Such violations may be grounds for dismissal. *Best v. Culhane*, 677 S.W.

2d 390 (Mo.App.1984). Nevertheless, appellate courts need not take that drastic step where the issues raised merit discussion, *Estate of Groeper v. Groeper*, 665 S.W.2d 367, 368 (Mo.App.1984), or where the case involves the best interests of a child, *Zytniak v. Zytniak*, 725 S.W.2d 35, 27 (Mo.App.1986). Here the plaintiff appeals from the court's failure to award her compensation for the expenses incurred in supporting the defendant's child and in establishing the child's parentage. Because of the effect of those issues on the plaintiff's ability to support the child, we decline to dismiss the appeal.

 A mother's right to recover past expenditures for a child born out of wedlock arises under a quasi-contract theory. *Parker v. Bruner*, 692 S.W.2d 379, 382 (Mo.App.1985). That right arises from the father's obligation to support his minor children. If the father fails to fulfill that obligation he must compensate one who has provided necessaries for the child unless that person supplied them gratuitously. *McNulty v. Heitman*, 600 S.W.2d 168, 171 (Mo.App.1980). Since the plaintiff also had an obligation to provide such support as Adam's mother, she did not provide it gratuitously. *Id.* at 172. Therefore, she has a right to recover compensation for her past support.

The defendant argues that the trial court properly denied recovery because the plaintiff failed to establish the amount of her expenses by credible evidence. He points to inconsistencies in her testimony at the support hearing and to her failure to provide sufficient documentation to support her claims. Clearly, just as the court had the right to believe the plaintiff's testimony in the paternity hearing, it could disbelieve her testimony in the support hearing. We defer to the trial court's judgment of a witness' credibility. *Corzine v. Stoff, supra.*

 We do not, however, defer to the trial court's ultimate finding that the plaintiff incurred no compensable expenses in the thirty-nine months between Adam's birth and the time of the trial. Although

the court could have disbelieved the plaintiff's testimony concerning the actual amount of her expenditures on Adam's behalf, we find incredible the court's finding that no compensable expenses appear in the record. Sufficient evidence exists for the court to determine the reasonably necessary expenditures for which the plaintiff should be compensated.

 The defendant cites § 210.841.4[2] for the proposition that "[t]he court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just." Because the plaintiff filed her petition before the effective date of the statute that section does not govern this case. Missouri courts have, however, approved a similar standard in determining the father's liability for such expenses, limiting compensation to a "reasonable amount." *See Crockett v. Schlingman*, 741 S.W.2d 717, 720 (Mo.App.1987). But a "reasonable amount" standard necessarily suggests that *some* amount is reasonable. Failure to award any compensation for past expenses amounts to an abuse of discretion. We reverse the trial court's judgment on this issue and remand for a determination of the reasonable amount of necessaries furnished by the plaintiff.

 The plaintiff also appeals from the trial court's failure to award her attorney fees for the prosecution of the paternity action. The court in the exercise of its equitable jurisdiction may award attorney fees in such suits. *Stegemann v. Fauk*, 571 S.W.2d 697, 701 (Mo.App.1978). The party seeking an award of attorney fees may recover only those related to prosecuting the paternity action, not those incurred in the suit for past support. *Parker v. Bruner*, 692 S.W.2d 379 (Mo.App.1985). To determine the appropriate proportion of attorney fees, the court should consider the need of the one seeking the fees and the ability of the opposing party to pay. *Id.*

 In *Parker v. Bruner, supra*, the court found that the trial court had abused its discretion when it charged only $1,000 out of $10,000 in attorney fees against the defendant when the defendant father had

---

**2.** Revised Statutes of Missouri, Supp.1987.

an income considerably higher than the plaintiff mother. Here, the defendant, as a physician, possesses considerably greater earning potential than the plaintiff. Moreover, his tardy attempt to establish his sterility served to prolong the litigation and required additional effort in the plaintiff's behalf. Under those circumstances, the trial court should have ordered the defendant to share the costs of proving Adam's paternity. *Cf. R.E.G. v. E.K.H.*, 761 S.W.2d 289, 290–91 (Mo.App.1988) (when the father originally denied, and later admitted paternity, the court erred in failing to award attorney fees). Therefore, we will enter the order that the court should have entered. Our review of the record establishes that $5,380 of the plaintiff's attorney fees are attributable to the paternity action. We order the plaintiff to pay $3,766 of those fees.

Accordingly, we affirm the trial court's finding of paternity. We reverse and remand to the trial court for further proceedings on the issue of compensation for the necessary expenses that the plaintiff incurred in support of Adam, and we order the defendant to pay $3,766 of the plaintiff's attorney fees.

All concur.