Emily Ruth PAYNE, by her
Next Friend, Darcas P.
PAYNE, Plaintiff,

and

Darcas P. Payne, Plaintiff–Appellant,

v.

Franklin David DELP, Defendant–
Respondent.

No. 17384.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 13, 1992.

Frederick W. Martin, III, West Plains,
for appellant.

H. Lynn Henry, Henry & Henry, P.C.,
West Plains, for defendant-respondent.

FLANIGAN, Chief Judge.

On October 11, 1984, plaintiffs Emily
Ruth Payne, a minor, and Darcas Payne,
filed this action against defendant Franklin
Delp, seeking a declaration that defendant
is the father of Emily. Darcas is Emily's
mother. The petition also sought an order
requiring defendant to pay a reasonable
sum to Darcas for the support of Emily
and an order requiring defendant to pay
Darcas $2,685 for "the birth and mainte-
nance" of Emily and $200 for the "prenatal
care" of Emily.

Defendant's answer admitted his paterni-
ty of Emily, denied that Darcas had in-
curred costs in the amount of $2,685 for
Emily's birth and maintenance, and also
denied that Darcas had incurred expenses
of $200 for prenatal care.

Following a non-jury trial, held on De-
cember 7, 1990, the trial court found that

defendant was the natural father of Emily, awarded custody of Emily to Darcas, subject to reasonable visitation privileges of defendant, and ordered defendant to pay $200 per month, commencing January 1, 1991, to Darcas for the support of Emily. The judgment denied Darcas's claim "for reimbursement of birth expenses and back child support." Darcas appeals.

■ Darcas's sole point is that the trial court erred in denying her claim for reimbursement of birth expenses and back child support "in that the trial court found defendant to be the natural father of Emily and substantial evidence established that Darcas had provided for the birth and support of the child up until the time of trial."

■ The Uniform Parentage Act, § 210.-817[1] to § 210.852, RSMo 1987, does not apply to this proceeding because it was commenced prior to July 15, 1987, and there was no agreement by the parties and the court that the provisions of the Act would apply. See § 210.852, RSMo 1987; *Robinett v. Robinett,* 770 S.W.2d 299, 305 (Mo.App.1989); *R.E.G. v. E.K.H.,* 761 S.W.2d 289, 290 (Mo.App.1988).

■ Appellate review of this court-tried case is governed by Rule 73.01(c) as construed in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). See *R.E.G. v. E.K.H., supra,* 761 S.W.2d at 290; *Mueller v. Jones,* 583 S.W.2d 222, 224 (Mo.App. 1979). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously applies or declares the law.

At time of trial, Darcas was 34 and defendant was 44. Their relationship commenced in March of 1981 and continued until August 1984. Emily was born October 4, 1983.

When defendant's relationship commenced with Darcas he was married to another woman, and that marriage continues. Defendant and his wife have three children, two of whom were "grown" at time of trial, and the third, a 16–year–old son, lives at home with his parents.

Darcas is the mother of three children in addition to Emily. Those children, born respectively in 1974, 1976 and 1977, were products of Darcas's marriage to another man, from whom she was divorced in July 1982. In December 1984, Darcas married another man, divorced him in 1986, and was single at time of trial.

There was no significant factual dispute. Darcas and Franklin had a sexual relationship which commenced in March 1981 and continued until August 1984. On November 26, 1982, defendant, at the request of Darcas, signed a document in which defendant agreed "to pay support and prenatal care in case of pregnancy of Darcas, which we both agree on trying to conceive."

The hospital bill for the birth of Emily amounted to $1,424.87. Darcas testified she did not pay any of this bill and "turned it over to Medicaid." The medical expenses for prenatal care totaled $724, of which Darcas paid $163, and $450 was paid by Medicaid, leaving an unpaid balance of $111. On her deposition, Darcas testified that she was requesting $100 a month in child support and $111 for the balance of the doctor bill.

Other than her testimony with respect to the medical and hospital bills, Darcas gave no testimony concerning expenses she had incurred for the support of Emily prior to the trial. Darcas drew Aid for Dependent Children benefits for Emily from October 1983 until August 1984. She also received child support for her other three children from their father. At the time of trial, Darcas had been employed almost five years at a truck stop, earning $6.10 per hour for a work week which varied from 32 to 40 hours. She testified she receives food stamps of "$100 to $200 per month" for "all four children and me."

Defendant contributed no money for child support or medical or hospital expenses.

1. Unless otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Franklin's income tax returns were introduced into evidence. From 1979 until 1989 he worked as a truck driver. His annual earnings varied from 1983 to 1989. In some years he had a net loss. His 1988 income was $12,991 and his 1989 income was $20,321.

Defendant was not employed after January 1990 because he lost his commercial driving license "for too many speeding tickets." He testified that his wife's income was the sole income for his household. He said he was unable to obtain work as a truck driver after January 1990 "because my insurance is too high and will be for three years and nobody will hire you. At present I have zero income and no immediate prospects of work."

■■■ A child's right to support from the father is not impaired by the child's illegitimacy. *K.D.R. v. D.E.S.*, 637 S.W.2d 691, 693[1] (Mo. banc 1982); *R— v. R—*, 431 S.W.2d 152, 154 (Mo.1968); *R.E.G. v. E.K.H., supra*, 761 S.W.2d at 290; *Crockett by Crockett v. Schlingman*, 741 S.W.2d 717, 720 (Mo.App.1987); *Mueller v. Jones, supra*, 583 S.W.2d at 223–224.

[T]he father of minor children has the primary common law duty and obligation to support his children. When the father does not supply such necessities, he is liable to a third party who furnishes them unless furnished gratuitously. Similarly, where the father neglects to support the child and it is supported by its mother, she may sustain a common law action against the father to recover the value of the necessaries furnished.

*State ex rel. Div. of Fam. S. v. Standridge*, 676 S.W.2d 513, 515 (Mo. banc 1984) (citing authorities). "[T]he father's ability to pay is not an element of a cause of action to recover for necessaries supplied his child." *Id.* at 517.

■■ "[T]here is no such thing as 'past child support' in our law, but rather, the matter is really one of quasi-contract with the other parent ... or, as one court has held, the same is an 'accrued debt.' *See N.R. v. R.J.D.*, 588 S.W.2d 76 (Mo.App. 1979)." *Sweany v. Meinecke*, 691 S.W.2d 368, 371 (Mo.App.1985). An action by the mother against the father for recovery for past expenditures for her illegitimate child "has nothing to do with child support; the mother alone is entitled to reimbursement upon the basis of her quasi-contractual relationship with the child's father.... In her action for reimbursement, the mother is the only interested plaintiff. 'If [the judgment is] collected, that money goes to her, not to the child, who has already had the past support.'" *V— v. S—*, 579 S.W.2d 149, 151–152 (Mo.App.1979).

Past due child support is based upon the legal principle of reimbursement for necessaries, not the equitable principles applied to determine prospective support. Past, or back, support is limited to the reasonable value of necessaries supplied the minor child by the custodial parent. Once paternity is established, the trial court may divide the expense of past necessaries between both parents. Proper allocation of the burden of back support requires consideration of the financial condition of each parent. This includes consideration of both past and present earnings.

*Landoll v. Dovell*, 778 S.W.2d 846, 847–848 (Mo.App.1989) (citing authorities).

In *Parker v. Bruner*, 692 S.W.2d 379 (Mo.App.1985), this court held that in an action by the mother of an illegitimate child against the father for reimbursement for expenses of birth, the trial court could properly deduct the amount of expenses paid for by insurance and not by the mother herself, and that the "collateral source rule," which would bar such deduction in a tort action, did not apply.

In *Robinett v. Robinett, supra,* in which the mother of an illegitimate child sought reimbursement from the defendant-father for past expenditures she incurred in supporting the child, the trial court made no award for those expenditures. In reversing, the court of appeals pointed out that sufficient evidence existed for the court to determine the reasonably necessary expenditures for which the mother should be compensated and that it would not defer to the trial court's ultimate finding that the mother incurred no compensable expenses in the 39 months between the birth and the time of trial. The court said, at 305: "Al-

though the court could have disbelieved the plaintiff's testimony concerning the actual amount of her expenditures on Adam's behalf, we find incredible the court's finding that no compensable expenses appear in the record." The court also said: "Failure to award any compensation for past expenses amounts to an abuse of discretion."

Unlike the situation in *Robinett*, the instant record does not contain sufficient evidence for the trial court to have determined the reasonably necessary expenses for which Darcas should be compensated. Although she had the opportunity to present such evidence, she did not do so.

The medical and hospital bills connected with Emily's birth were paid for by sources other than Darcas, except that Darcas claimed that she had paid $163. She offered no evidence with regard to expenses she had incurred in supporting Emily. The prayer of the petition, so far as it purported to make a claim for past child support, sought "the sums of Two Thousand Six Hundred Eighty–Five Dollars ($2,685) for the birth and maintenance of [Emily] and Two Hundred Dollars ($200) as and for the prenatal care of [Emily]." The medical and hospital bills account for the bulk of that demand. Her testimony was that she received Aid for Dependent Children benefits for Emily from her birth until August 1984. Thereafter, for two years, Darcas was married to another man and there was no showing that he did not contribute to Emily's support. She received benefits in the form of food stamps for the support of Emily. The trial court's award for the support of Emily commencing January 1, 1991, exceeded the amount which, as stated in her deposition, Darcas was requesting.

This court concludes that the judgment of the trial court is supported by substantial evidence and is not against the weight of the evidence and that it does not erroneously declare or apply the law.

The judgment is affirmed.

SHRUM, P.J., and MAUS, J., concur.