■ The state first responds that Mansfield did not preserve this point, either, because of the manner in which he phrased his point relied on. We agree. Rule 30.06(d) says, "The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed[.]" Although in arguing his point Mansfield makes clear that he is complaining of the motion court's denial of his Rule 29.15 motion for postconviction relief, his point relied on does not mention the motion court at all and leaves us to assume that this is the case. Even if we were to make this assumption, the motion court considered Mansfield's points and ruled against him. The motion court made 38 pages of extensive findings of fact and conclusions of law addressing each of the points raised on appeal after an evi-

**STATE ex rel. O.H., Respondent,**

v.

**J.F.P., Appellant.**

**No. WD 48718.**

Missouri Court of Appeals,
Western District.

Jan. 24, 1995.

Robert E. Wonder, Daniel L. Franco, Kansas City, for appellant.

Don L. Cowan, Kansas City, for respondent.

Before ULRICH, P.J., and KENNEDY and BERREY, JJ.

BERREY, Judge.

J.F.P. appeals the trial court's findings that he was responsible for $7,176 back child care, and $746 monthly child support. He also appeals the failure of the trial court to appoint a guardian ad litem for J.D.P.

J.F.P. was a practicing attorney in Kansas City when O.H. was referred to him. Her minor son, J.W. was injured in a motor vehicle accident. J.W. was a passenger in a car being driven by O.H.'s sister L.H. After protracted negotiation, J.F.P. secured the policy limits of $25,000 for the benefit of J.W. A friendly suit was then entered into and the court approved the settlement. This attorney/client relationship extended from 1987 through May 28, 1988. Subsequent to the settlement of the friendly suit, J.F.P. acknowledged he had sex with O.H. on at least three occasions. O.H. testified that she and J.F.P. were lovers and that their affair carried on from August, 1987, through March, 1991. O.H. delivered J.D.P. on December 29, 1988.

O.H.'s expert witness, Dr. Maba, testified that he had a bachelor of science degree in psychology from St. Louis University and a Ph.D. in genetics from Illinois University at Urbana. Dr. Maba testified he was Director of Laboratory Operations for Roche Biomedical Laboratories in Burlington, North Carolina. As a result of DNA and HLA testing, Dr. Maba testified that J.F.P. possessed the genetic marker necessary to establish that he was the biological father of J.D.P. The statistical likelihood that this is true, according to HLA testing, is 99.88%. The testing did not exclude J.F.P. as the potential biological father. Dr. Maba calculated the combined paternity index was 6,593,251 to 1, which translates to J.F.P. being "6,593,251 times more likely to have produced or passed the genetic marker needed to be the biological father than someone else at random in the

population." Dr. Maba concluded that the DNA probability of J.F.P. being the father of J.D.P. is 99.99%. At the conclusion of the evidence the court found that J.F.P. is the biological father of J.D.P. The trial was bifurcated with evidence regarding J.F.P.'s ability to pay support and the needs of the child was heard by the court on August 20, 1993. J.F.P. did not appeal from the trial court finding that he was the biological father of J.D.P.

During the second half of the trial, it was determined O.H. was employed by the "Ad Hoc Group Against Crime" with a monthly income of approximately $1,922. O.H. paid $34 per week as day care costs for J.D.P. O.H. had five outstanding student loans. These were incurred while she pursued a bachelor of science in administration of justice from the University of Missouri at Kansas City. O.H. testified that her total monthly expenses were $2,298. O.H. testified J.D.P. had severe ear infections and has tubes in his ears. J.D.P.'s care was paid for by Medicaid. O.H. further testified she used some of her money from student loans to take care of her children. She received two years college from a state program. In August of 1989, she returned to school for 18 weeks. Her day care for J.D.P. was then $50 per week because J.D.P. was an infant. O.H.'s Exhibit 4, statement of income and expenses lists her net take home pay per month as $1,020.26. In addition she receives $714 per month from social security for three other minor children. Her expenses including rent, clothing, food, etc. is $2,298 per month pursuant to Exhibit 7. She has reconstituted the day care expenses she incurred from 1989 through 1992 for J.D.P. at $7,176.

J.F.P. is employed as a Commissioner for the Circuit Court of Jackson County, Missouri. According to his "Income and Expenses Statement" his salary is $5,088.17 per month.

J.F.P. alleges three points of trial court error: 1) the award of $7,176 was based on insufficient evidence; 2) the trial court erred in ordering J.F.P. to pay $746 per month child support, and; 3) the trial court erred in failing to appoint a guardian ad litem for J.D.P.

■ In reviewing the actions of the trial court in a court tried case we are guided by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976) and will sustain the trial court unless the judgment is against the weight of the evidence, there is no substantial evidence to support the judgment, or the trial court erroneously declares or applies the law.

I

■ J.F.P.'s assertion that day care is not a reasonable expense is misplaced. In an effort to better her life and subsequently the life of her children, O.H. enrolled in college. Day care was necessary for J.D.P.

Section 210.841.6 RSMo 1992, requires the court to consider all relevant facts in determining the amount of child support to be paid. Such a determination shall consider all relevant facts, including:

(1) The needs of the child;

(2) The standard of living and circumstances of the parents;

(3) The relative financial means of the parents;

(4) The earning ability of the parents;

(5) The need and capacity of the child for education, including higher education;

(6) The age of the child;

(7) The financial resources and earning capacity of the child;

(8) The responsibility of the parents for the support of other children;

(9) The value of the services contributed by the custodial parent; and

(10) The standard of living and circumstances of the family prior to the dissolution of marriage of parents or during the period of cohabitation of the parents.

The Uniform Parentage Act (UPA), § 210.841 RSMo Supp.1992, provides a parents retroactive liability to another for reimbursement of necessary support provided by that party to the child, is limited to a period of five years next preceding the commencement of the action. The reasonable value of the necessities supplied to the child by the mother for that five year period should be

used by the court in delivering the past obligation of father. *Landoll by Landoll v. Dovell,* 778 S.W.2d 846, 847 (Mo.App.1989).

In the instant case the court has before it a single receipt for child care, the mother's testimony, and Form 14. O.H. testified she spent $34 per week as day care costs for J.D.P. O.H. offered Exhibit 1 which was a receipt from Palestine Day Care for $136. This was for one month's care. O.H. offered Exhibit 4, a copy of her income and expenses. O.H. further testified that when J.D.P. was an infant, up to the age of two, the day care center charged $50 per week for child care.

The trial court determined day care to be included in necessities for a child "food, clothing, and it would include day care." O.H., by her Exhibit 7, offered a recap of her child care expenses for this period of time totaling $7,146. O.H. testified that during this period from 1989 through 1992 she had expended additional funds on necessities for J.D.P. She had purchased milk, "pampers", clothing but did not seek reimbursement for these items. She incurred day care expenses from August, 1989, through the spring of 1991. The day care was $50 a week. Commencing in the summer of 1991, the cost was reduced to $34 per week.

J.F.P. cites *Robinett v. Robinett,* 770 S.W.2d 299 (Mo.App.1989) in support of his contention that O.H. is responsible for some portion of the child care expenses for J.D.P. In *Robinett,* it was declared an abuse of discretion for the trial court not to award any compensation for past expenses. In the instant case, as in *Robinett,* there was sufficient evidence for the court to determine the reasonable and necessary expenses for which O.H. should be compensated. There was ample evidence in the record regarding the expenses incurred in the care of J.D.P. O.H. sought only reimbursement for child care. The child care was a reasonable expense incurred by O.H. for J.D.P. When a custodial parent is at work or school, child care is a necessary expense.

Appellant's Point I is denied.

II

J.F.P. next alleges the trial court erred in ordering him to pay $746 per month child support, as being excessive and against the weight of the evidence.

Both parties submitted a completed Form 14. However, J.F.P.'s form discloses the gross noncustodial parent's income at $5,088.71 as opposed to O.H.'s figure for the noncustodial parent's gross income at $5,833.33. J.F.P. testified his gross salary was about $5,800 per month and $70,000 per year. Simple mathematics indicate that $5,833.33 is the correct monthly gross if in fact the annual gross salary is $70,000.

Both parties indicate that $147 is the custodial parents work related child care costs. Based on the information submitted, J.F.P. claims the proportionate share of the combined income is 19% to O.H. and 81% to himself. O.H. alleges the proportionate share is 82% to J.F.P. and 18% to herself. The trial court did not abuse its discretion in awarding $746 per month child support. The completed Form 14's and the schedule in Rule 88 provide for this amount.

J.F.P. has one unemancipated child living with him and his wife. His wife earns $24,-792 per year. O.H.'s total earned income is $1,208.33 per month plus $714 that she receives for the other children in her custody. Additionally, she receives sporadic support for a fourth child. Considering the living standard of both families, their respective incomes, and the age and needs of J.D.P., the trial court did not err in assessing $746 for child support. The trial court was obligated to follow the mandate of Rule 88.01(a), Form 14. *K.R.W. by A.C.S. v. D.B.W.,* 830 S.W.2d 38, 41 (Mo.App.1992). There is a rebuttable presumption that the amount of child support calculated under Form 14 is the amount to be awarded. *Brotherton v. Lowe,* 819 S.W.2d 74, 79 (Mo.App.1991). To rebut the presumption, the trial court must make a written or specific finding on the record that the amount calculated pursuant to Rule 88 and Form 14 would be unjust or inappropriate. *Id.*

Here the award is not different. The trial court entered the amount of child support required by the schedule.

Point II is denied.

### III

◼ For his final point, J.F.P. alleges the trial court erred when it failed to appoint a guardian ad litem for J.D.P. There was no allegation of abuse or neglect contained in the pleadings. According to § 210.830 RSMo 1986, the court shall appoint a guardian ad litem for a child "only if child abuse or neglect is alleged, or if the child is a named defendant or if the court determines that the interests of the child and his next friend are in conflict."

In civil actions against minors, a guardian or a guardian ad litem should be appointed for the minor before such civil action may proceed after service of process upon said minor. Rule 52.02(c). *Lechner v. Whitesell,* 811 S.W.2d 859, 861 (Mo.App.1991). In the instant case, J.D.P. was not a party defendant.

◼ A trial court commits reversible error if it does not appoint a next friend in a paternity and support action. *S.J.V. by Blank v. Voshage,* 860 S.W.2d 802, 803 (Mo. App.1993). O.H. was appointed next friend for J.D.P. on November 25, 1991. Since there were not allegations of abuse or neglect or conflict of interest, and no evidence presented regarding same, the trial court did not err by denying J.F.P.'s request for the appointment of a guardian ad litem.

J.F.P. alleges that a conflict of interest exists between the child and the next friend and that this conflict arises because J.F.P. is a prominent member of the community and financially successful. J.F.P. alleges a conflict exists because of the next friend's interest in having him declared J.D.P.'s father rather than in having the "right" man declared his father.

This is indeed a far reaching specious argument. The record does not reveal acrimony or hostility. It does reveal a 99.99% chance that J.F.P. is the father of J.D.P.

Point III is denied. The judgment is affirmed.

All concur.