**Elsie L. FOSTER, et al., Respondent,**

v.

**Donald E. EICHLER, Appellant.**

**No. WD 52424.**

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Raoul Stitt, Asst. Pros. Atty., Jackson County, Kansas City, for Respondent.

L. Clay Barton, Oak Grove, for Appellant.

Before LOWENSTEIN, P.J., and ULRICH and EDWIN H. SMITH, JJ.

LOWENSTEIN, Judge.

In this paternity action brought under the Uniform Parentage Act, as adopted in Missouri in §§ 210.814—852, RSMo 1994 [1], appellant, adjudged to be the child's father, wants a declaration by this court that where an alleged father had a vasectomy prior to conception, and tested negative in pre and post conception sterility tests, he cannot, even where blood tests show a 99.99% probability he is the father, be found to be the father.

On April 30, 1982, appellant had a vasectomy. The doctor saw him again on June 17 and October 5, 1982 and testified that semen analyses taken on those dates were negative. Appellant and respondent met, and first engaged in sexual intercourse in June of 1982. Relying on appellant's vasectomy, they never used any other method of birth control. In May 1984, while they were still having sexual relations, this child was conceived. When appellant was told of the pregnancy in August 1984, he reminded respondent of his vasectomy. On August 7, 1984 appellant returned to Dr. Lentz, the doctor who performed his vasectomy, for a third "semen analysis" which was negative. Later, a fourth test was done with the same result. Respondent gave birth to an eight pound ten and one-half ounce son on February 28, 1985. The mother, the child by next friend, the Division of Family Services, and the Jackson County Prosecutor filed this suit to declare paternity, seek child support, and recover previously provided support in March 1994. Two days before the December 7, 1995 trial of this matter, appellant returned to Dr. Lentz and received another negative semen analysis.

The court ordered two blood tests pursuant to § 210.834. Appellant challenged both the tests and the results, which together showed a 99.9999% probability that he was the father. Expert testimony on behalf of respondent concluded that appellant was "practically proved" to be the child's father. *State ex rel. Anderson v. Sutton,* 807 S.W.2d 152, 155 (Mo.App.1991). Dr. Lentz, a board

---

1. All statutory references are to RSMo 1994 unless otherwise noted.

certified physician, testified for the defendant that there was no indication appellant was medically capable of producing a child after he performed the April 1982 vasectomy. Dr. Noble testified for respondent that there are vasectomy failures and sometimes a canal is temporarily formed which allows semen to escape for a limited time. The release signed by appellant prior to his vasectomy states there is a possibility of failure due to "recanalization." Dr. Noble testified a random emission could occur without warning, in spite of repeated tests in the doctor's office showing a negative reading. The Family Court Commissioner allowed the blood test results in evidence, declared appellant to be the father, and entered a decree for both future and past support and for reimbursement of necessary expenses. The Family Court adopted the Commissioner's findings and recommendations.

Appellant's first point on appeal asserts the trial court erred in allowing into evidence, over his objection, the results and analysis of the two court ordered blood tests by Roche Biomedical and the Blood Center of Southeastern Wisconsin. Both tests showed a greater than 98% probability the appellant was the father. A third exhibit, prepared by an expert witness, combined the two tests to come up with the 99.9999% figure previously mentioned. Under § 210.822.1.(5), a man is presumed to be the natural father if "[T]he experts conclude that the blood tests show that the alleged parent is not excluded and that the probability of paternity is ninety-eight percent or higher, using a prior probability of 0.5." In § 210.822.2, the legislature declares a presumption under the law "... may be rebutted in an appropriate action only by clear and convincing evidence...."

▪ Appellant asked the trial court and now asks this court to ignore the .05 % language of the statute where there is evidence of a vasectomy. He claims evidence of a vasectomy proves by clear and convincing evidence he is sterile and should be excluded from consideration as the father. Further, appellant would prohibit introduction of blood test evidence because of the clear and convincing evidence of sterility due to a vasectomy. This court affirms the trial court's holding that the statutory language of

§ 210.822 cannot be ignored nor forsaken where a vasectomy is involved. This court is not at liberty to tinker with the language of the Parentage Act language and revise the .05% probability language for this case. The evidence favorable to the judgment indicates there are a few cases where vasectomies do not work, and periodic testing does not always insure constant infertility. Though appellant makes a strong point here, the inescapable conclusion drawn from evidence of genetic testing, supports the admission of the blood tests, and supplies sufficient evidence to support the result in this court-tried matter. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

▪ Appellant's alternative argument to the first point is that even if the statutory presumption is created by the introduction of the blood tests, then he has rebutted the presumption by clear and convincing evidence. He says he "cannot imagine what greater evidence of sterility by vasectomy there could be than five negative semen analysis, two of which were pre-conception, and live testimony from a board certified urologist who performed the vasectomy as to how and when the operation was performed and the success of the procedure." He cites this court's decision in *Robinett v. Robinett,* 770 S.W.2d 299 (Mo.App.1989) as authority for his proposition. Like the case at bar, *Robinett* involved a genetic analysis of blood tests, with a 99.56% probability that the defendant was the father, *Id.* at 302, but there was less confirmation of the time and later testing of the vasectomy. *Id.* at 303—04. In affirming a judgment of paternity, this court recognized the plaintiff has the burden of proof in a paternity suit. *Id.* 303. The opinion went on to say this burden was met and the trial court's judgment was supported by substantial evidence of copulation between the plaintiff and the defendant, and that the plaintiff had not had sex with another man, which created an "inference that the defendant was fertile at the time of conception." *Id.*

In this case, respondent's expert said the appellant was the father, appellant's expert said the appellant had five negative sperm tests and, as a result, could not be the father. Yet another expert said the genetic testing of the blood samples showed better than a 99% probability the defendant was the father.

*State ex. rel Department of Social Services v. Kobusch,* 908 S.W.2d 383, 384 (Mo.App.1995). Under the standard of review, there was substantial evidence to support the judgment of paternity. The trial court entered this judgment after observing the witnesses and examining and weighing the evidence.

In his final point, appellant asserts a variation on the theme that he was infertile due to the vasectomy despite the results of the blood tests and genetic testing. He asserts the trial court erred in treating his infertility as an affirmative defense. He is correct on this last assertion. *Robinett,* 770 S.W.2d at 303, concludes sterility is not an affirmative defense (sterility need not be pleaded affirmatively). This point does not mandate a change in the result. *Robinett* requires the plaintiff to sustain the burden of proving paternity, and part of the proof is that the alleged father is fertile. *Id.* The respondent here sustained, and the trial court recognized satisfaction of that burden here, albeit on drastically conflicting evidence. As stated in *Robinett,* the court could disbelieve appellant's evidence of sterility on the date of conception. There was believable and substantial evidence here that vasectomies are not fully successful all the time. The trial court weighed the evidence, *Kobusch,* supra at 384, and concluded appellant was fertile when the child was conceived. Based on the evidence, this court may not second guess the trial court's result.

Though this court is not unsympathetic to the appellant's dismay at the weight the trial court gave to his evidence of sterility, the trial court was not under a duty to believe, be bound by, or enter judgment in this case for the alleged father. There was evidence the mother had unprotected sex with appellant, and no other, at the time of conception. This evidence coupled with the statutory presumption created with blood and genetic tests indicating over 98% likelihood of paternity, supports the result reached at trial.

The judgment is affirmed.

All concur.