**In re the Marriage of John W. EATH-
ERTON, Petitioner-Appellant.**

v.

**Toni Arleen EATHERTON,
Respondent-Respondent.**

No. 51663.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 24, 1987.

---

David C. Howard, St. Louis, for petitioner-appellant.

Mark S. Vincent, Union, for respondent-respondent.

REINHARD, Judge.

Father appeals from a trial court order modifying a dissolution decree to change primary custody of the parties' one child from father to mother. We reverse.

The record reveals that the child, Brenda, was born of the marriage on December 4, 1979. The first hearing in the dissolution action was in March 1985. On April 1, 1985, the judge wrote the following letter to the attorneys for the parties:

Here is the decision in the Eatherton dissolution:

A. Marriage dissolved;

B. Primary custody to him with temporary custody and visitation with her on the first weekend of each month from 5:00 p.m. on Friday till 8:00 p.m. on Sunday. She pays him $10.00 per week child support;

C. He gets 307 Grand, Glencoe, Mo.;

D. She gets 1977 Mustang, he gets 1972 El Camino;

E. Her dishes, bedroom suite, pots and pans are to be returned to her by April 15, 1985;

F. 405 Cherry Street, Pacific, is to be sold and divided evenly;

G. Both pay own attorney.

At the bottom of the letter was the handwritten notation, "Kelly (father's attorney at the time) write decree."

Pursuant to after-trial motions, the court, on November 13, 1985, made the following order on the court docket sheet: "Decree of 4–1–85 affirmed and republished with additions...." The "additions" pertained to property matters. On December 5, 1985, the court set aside the November 13, 1985, order and entered the following order on the docket sheet:

Decree/order of 4–1–85 and 11–13–85 reaffirmed as modified; additions or modifications are: He is to pay all debts incurred for purchase and repair of Glencoe property and hold her harmless thereon, she is to receive all in pre-marital personalty listed in schedule attached to her financial and income and expense statement excepting therefrom any house plant which has died. She is to receive from the schedule of after-marriage property the photographs, the one gallon Thermos jug, the red and white

cooler, the house plants, the wooden ironing board, the chiffonier, the red painted tables, the microwave, and the cookbook. Further, there shall be temporary custody of Brenda by her mother on Christmas Day, Good Friday, Memorial Day, Labor Day, Brenda's birthday of odd number years and New Years Day, Easter, July 4th, Thanksgiving and the following Friday, and Christmas Eve of even number years. The court assumes that two adults can work out the times in the best interests of Brenda! Costs to be split evenly. Kelly type decree.[1]

On December 30, 1985, mother filed a motion "to modify the Decree of Dissolution heretofore entered" on December 5, 1985. She alleged that since the date of the decree there had been "changes in circumstances of a continuing and substantial nature" concerning Brenda's custody in that father had interfered with mother's custody rights to the extent that she had been "totally unable to enjoy the custody rights granted by this Court to include a direct violation of this Court's Order by refusing custody to Respondent over Christmas Day, 1985." She also alleged that "[father] has refused and continues to refuse [mother] access to the minor child" and that "since the entry of said Decree [father] has attempted to completely alienate the affections of the minor child ... by telling the said child that [mother] does not love or want the said child."

A hearing on mother's motion to modify was heard on March 27, 1986. On April 18, 1986, the court entered an order on the docket sheet modifying the December 5, 1985, decree to change primary custody of the child from father to mother and to grant temporary custody on specified dates to father. The court also ordered father to pay $30.00 per week for child support and $500.00 of mother's attorney fees.

Father challenges the sufficiency of the evidence to support a change of custody. He contends there was insufficient evidence that "a change of circumstances so substantial and so continuing had occurred as to make the original terms of the original decree unreasonable."

Mother's evidence was that she first heard of the December 5, 1985, decree on December 13. She testified that she was visiting the child in father's home on December 22 and asked him "when I could pick Brenda up on Christmas Day. And he said I couldn't have her. And I said, 'Well, John, the divorce decree is through and I'm supposed to have her Christmas Day.' And he said he was busy and I couldn't see her."

Mother did not see the child on Christmas Day or New Year's Day. She saw Brenda at father's house on December 28 and on the first weekend in January for a short time, but father was present during those visits. She also saw Brenda on January 17 and February 1, 17, and 26 and had overnight custody of her for the first time on March 7, 8, and 9. Twice in February mother told father, as she had on December 22 and January 1, that she was to have the child on the first weekend of every month. When mother told him this on the first weekend in February, father responded that "he didn't know anything about it. And I said, 'Well, I suggest you call your lawyer.' ... He said 'You're just—you're not going to have her.'"

On two occasions in February, in front of the child, while the parties were arguing over property, father called mother "a bitch" and "a no-good bitch." Mother also testified the child asked her "why did you run away from home?" and told her "Daddy told me you ran away from home because you didn't love me any more."

1. Apparently attorney Kelly did not prepare a formal decree. On the morning of March 27, 1986, the date of the hearing on mother's motion to modify, father's new attorney presented a formal decree which conformed to the court's earlier letter and docket entries. The judge signed the order. Father contends there was no judgment until then, and, therefore, mother's motion to modify was premature because there could be no change in condition between the signing of the decree and the modification hearing held the same day. We believe the court order was effective on December 5, 1985; however, we also believe the absence of a signed, formal decree led to some of the apparent confusion.

Father denied that mother had told him she would be coming to his home to see Brenda on Christmas Day. He said she did ask about seeing Brenda on Christmas Eve and he had told her "there was a lot of people coming over." He said it was in January when they discussed weekend visitation rights. He then contacted his lawyer and, late in January, obtained a copy of the December 5 order which listed the days mother was to have temporary custody of Brenda. He said that after he received a copy of the order, he still did not have a clear understanding of her visitation rights, believing mother's temporary custody had been changed from the first weekend of each month to certain holidays, "[a]nd all the holidays ... were all passed." At the motion hearing and on appeal, father had a different lawyer.

■ Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), by statute, and by certain principles of law as stated in similar cases.

The court shall not modify a prior custody decree unless ... it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child. Section 452.410, RSMo 1986. The movant bears the burden of proving facts to establish a change in circumstances. *Randle v. Randle*, 560 S.W.2d 876, 878 (Mo.App. 1977).

■ A court may modify a child custody decree only upon a showing of changed circumstances which have arisen since the prior decree or which existed at the time of the decree but were unknown to or concealed from the court. *Brand v. Brand*, 534 S.W.2d 628, 632 (Mo.App.1976). Interference with custody provisions or an attempt to alienate a child from a parent can constitute a changed condition and form the basis for a modification. *Christianson v. Christianson*, 592 S.W.2d 505, 508 (Mo. App.1979). Although interference with decretal rights can constitute a changed con-

dition and is a proper matter to consider in determining the best interests of the child, it is important that the parent know he or she is violating the decree. *Garrett v. Garrett*, 464 S.W.2d 740, 743 (Mo.App. 1971). Custody should not be changed when the violation is minor. *In re Marriage of Thompson*, 682 S.W.2d 849, 851 (Mo.App.1984).

We conclude that mother's evidence fails to satisfy her burden of proof. We reach this conclusion fully recognizing the trial court's ability to determine the credibility of the witnesses. We note there was no evidence about the living conditions of either parent, the income or other ability to pay on the part of either parent, or of the financial needs of the child.

■ Although derogatory comments by a parent in front of a child about the other parent are unacceptable, one or two instances, standing alone and without evidence of their effect on the child, are insufficient to support a change in the custody provision of a decree. The same is true about interference with custodial rights. We recognize that father's professed lack of actual knowledge about the status of the divorce proceedings and mother's recently enhanced visitation rights is the fault of his original attorney and mother should not be penalized; however, mother's evidence indicates only four occasions in a short period of time when father failed to let her have custody of Brenda, and several occasions not covered by the decree when she was permitted to at least visit the child.

From his testimony, father appears to have acquired actual knowledge of the changed child custody provisions after the incidents of interference had occurred. Once he acquired an understanding of mother's rights, father did not interfere with the March weekend custody. Considering the existence of several court orders and/or modifications and the absence of any single, formal decree, father's apparent confusion is understandable. Under all the circumstances of this case, the evidence in the record of changed conditions affecting the best interests of the child was

insufficient to support a modification of custody.

The April 18, 1986, order modifying the dissolution decree is reversed and the cause remanded with instructions to reinstate the dissolution decree of December 5, 1985.

SMITH, P.J., and DOWD, J., concur.