**Karen M. Lowe BROTHERTON, Petitioner–Respondent,**

v.

**Dennis R. LOWE, Respondent–Appellant.**

**No. 17383.**

Missouri Court of Appeals, Southern District, Division Two.

Oct. 30, 1991.

H. Lynn Henry, West Plains, for respondent-appellant.

Steven Privette, Willow Springs, for petitioner-respondent.

MONTGOMERY, Judge.

Dennis R. Lowe appeals from a judgment on his counter motion to modify child custody and support provisions of a decree of dissolution of marriage entered July 5, 1988. His former wife, Karen M. Lowe Brotherton,[1] filed a motion to modify on September 7, 1990, which prompted the counter motion of Dennis. The brief filed by Dennis presents two assignments of error with the first assignment containing four subparts.

The parties entered into a property settlement agreement which was approved and incorporated in the decree of dissolution of marriage. The property settlement agreement provided that the parties shall have the joint care, custody, and control of the minor children born of the marriage, to-wit: James Lowe, date of birth, October 31, 1973; and Shelly Lowe, date of birth, May 25, 1977, with Karen to have primary care, custody, and control of the minor children. Dennis was provided with only the right of reasonable visitation. Dennis agreed to pay Karen $100 per month per child with the provision that Dennis would deposit $200 monthly into a savings account at the Bank of Mountain View, Mountain View, Missouri, where Karen could obtain the child support.

Karen's motion to modify requested that Dennis pay child support directly to the Circuit Clerk of Howell County, Missouri, as trustee. She further requested that the court award specific visitation periods to Dennis. Dennis filed an answer and counter motion which requested that the court modify the decree of dissolution of marriage so as to award him the primary care, custody, and control of both minor children. Dennis asked to be awarded child support from Karen.

Trial of this matter took place on December 20, 1990, and on December 28, 1990, the trial court entered judgment which left Shelly Lowe in the primary custody of Karen, placed James Lowe in the primary custody of Dennis, ordered Dennis to continue child support payments of $100 monthly for the support of Shelly payable to the Circuit Clerk of Howell County, Missouri. Both parties were granted specific visitation rights with the child not in their custody. The judgment was silent as to child support from Karen payable to Dennis for James.

We paraphrase both claims of error by Dennis. First, he contends the decision of the trial court is against the weight of the evidence and the court abused its discretion in failing to award the custody of Shelly to Dennis because a substantial change of circumstances had occurred. Within this point he argues: (a) No exceptional circumstances existed to justify splitting up the children when Shelly expressed a preference to live with her father; (b) Karen's move from Shelly's lifelong community imposed a burden on the child's ability to associate with friends, classmates, relatives, and to attend school activities; (c) Karen lied to Shelly about the necessity of

1. We will hereafter refer to the parties by their respective first names.

her testifying at the motion to modify hearing; (d) Karen had refused to allow visitation to Dennis. In his second point, Dennis indicates the trial court erroneously failed to award child support to him for the support of James.

We note that neither party requested findings of fact and none were made. Therefore, all fact issues shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2).[2]

We outline the facts necessary for our decision in accord with the results reached by the trial court. Karen married Richard Brotherton December 24, 1989. Thereafter, they moved to White Church, Missouri, which is located twelve miles south of Mountain View, Missouri. White Church is located in the West Plains, Missouri, school district. Permission was given for Shelly and James to attend Mountain View schools because their father lived in that school district.

Shortly after their dissolution Karen allowed the children to spend an almost equal amount of time with Dennis. In the Summer of 1990 James expressed a preference to live with his father and thereafter moved to the home of Dennis in Mountain View, Missouri. Karen reluctantly agreed because James was nearly an adult and would be a junior in high school the next school year.

Soon Shelly expressed a preference to live with her father and brother although Karen testified that Shelly told her she did not know where she wanted to live and would be glad when the judge makes a decision. At trial, Shelly testified she preferred to live with Dennis because they get along well, she feels more secure there, and he cooks all the time. She complained that Karen cooks infrequently and often she eats at her grandmother's home.

Karen and Mr. Brotherton both work in Mountain View at Mountain View Fabricating. On their way to work Shelly is taken each school day to the home of her maternal grandparents in Mountain View. They live a few blocks from school and close to the home of Dennis. Shelly can walk to school but sometimes is taken by her grandparents. She returns to her grandparents' home where she is picked up by her mother. Often, Karen must wait for Shelly to finish basketball and volleyball practice after school. She must often be returned to Mountain View for extracurricular school activities. At the time of trial Shelly was thirteen and a half years old attending the eighth grade.

The maternal grandmother testified, without objection, that Shelly told her she wanted to live with her father because she can go anytime, without supervision, with her friends in town. She stated that Shelly had called her several times from her father's home when she was there alone. On one occasion Shelly called before 7:00 a.m. from her father's home asking her grandmother to bring some necessary personal items.

In the Fall of 1990, Karen filed two separate habeas corpus actions to obtain custody of Shelly from Dennis. In November of 1990, Shelly stayed most of the month with her father before she was returned to Karen by court order of November 29, 1990. Dennis explained the November arrival of Shelly in his home by saying, "She came of her own free will." He stated he did nothing to prevent Shelly from contacting her mother during the November stay. However, Karen testified she attempted to take Shelly from the home of Dennis and he told her to "get off his g—d—— property." Dennis also called Karen a "lying b——" in the presence of both children.

Between November 29, 1990, and trial date of December 20, 1990, Karen's testimony indicates she did not allow Shelly to visit her father. Karen explained, "I had no desire to go through another habeas corpus." The record reflects no pattern of denial of visitation except the time period before trial.

The son, James, testified that Dennis has a girlfriend who sometimes stays overnight in their home. This has occurred at times when Shelly was present. Dennis admitted

---

**2.** All rule references are Missouri Rules of Civil Procedure (1991), unless otherwise indicated.

his girlfriend stayed overnight when the children were there. When asked about the presence of the girlfriend, he responded, "This is the '90's, yeah."

Shelly's basketball coach and junior high counselor testified that she does well in school. She is an "A" and "B" student and extremely bright, motivated, and has an excellent attendance record.

On the day of trial Shelly stated her mother told her she would be picked up to testify around one o'clock. Later that morning Dennis came to pick her up from school and was told that Karen advised school officials Shelly would be in school all day. Karen did pick up Shelly at one o'clock that day in response to a subpoena.

The annual salary of Karen is $10,500 gross. Her husband earns approximately $28,000 yearly as a department manager. Dennis earned approximately $11,000 for 1990. His income is derived from a motorcycle business, a farm operation, and a carpentry business.

■ The scope of our review in this court-tried case is established by Rule 73.-01(c), as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Credibility of the witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988).

■ A spouse seeking change in custody of a child has the burden to show that a change has occurred in the circumstances of the child or the parent since the decree and that modification is necessary to serve the best interests of the child. *Wilhelmsen v. Peck*, 743 S.W.2d 88, 92 (Mo.App. 1987). An appellate court defers to the findings of the trial court in a matter of child custody unless firmly convinced that the welfare of the child requires some oth-

er disposition. *Hartig v. Hartig*, 738 S.W.2d 160, 161 (Mo.App.1987).

In his first point of alleged error, Dennis contends proof of changed circumstances required the trial court to order a change in the custody of Shelly. He points to the arrangements shortly after the dissolution was entered whereby the children spent about 50 percent of the time with him. Later Shelly expressed a preference to live with him. He complains that Karen did not cook for Shelly and often she was fed by her grandmother. In contrast, Dennis indicates he is a very good cook and prepares meals on a regular basis for Shelly.

■ Dennis ignores the evidence that Shelly is an "A" and "B" student who is extremely bright, motivated and has an excellent attendance record. Her scholastic achievements occurred while in the primary custody of Karen. The trial court obviously believed the maternal grandmother who testified that Shelly told her she desired to live with her father because she could go with her friends in town anytime without supervision. On several occasions she was left alone in her father's home when she was at best a 13–year–old eighth grader. This evidence alone supports the finding of the trial court in denial of the change of custody.

The overnight visits by Dennis's girlfriend are of no little importance. His attitude towards such conduct causes us concern about his fitness. He implies that such conduct is quite permissible because this is the '90s. In *M.L.G. v. J.E.G.*, 671 S.W.2d 312 (Mo.App.1984), the court stated:

While no court can force a parent to observe any particular moral code, the moral fitness of a person seeking custody of a child is a proper subject for the court's consideration. [Citation omitted] Courts have consistently condemned exposure of children to adulterous and immoral conduct. In *In re Marriage of J.H.M. and E.C.M.*, 544 S.W.2d 582, 585[2] (Mo.App.1976), the court observed that critical to its decision to award custody to the father was the fact 'that the mother's affairs were conducted with the

children's knowledge and while they were present in the house.'

*Id.* at 315.

We hold that the trial court correctly found that a modification of the custody arrangement of Shelly was not in her best interest.

■ Dennis claims that no exceptional circumstances existed to justify splitting up the children especially when Shelly expressed a preference to live with him. We recognized that principle regarding custody of children in *Cutbirth v. Cutbirth,* 758 S.W.2d 187 (Mo.App.1988). There we affirmed a modification decree of the trial court which gave custody of two older children to the father and left custody of two younger children to the mother.

We said:

In providing for child custody the trial court has broad discretion, and this court will not interfere unless the welfare of the children requires a different result. *In re Marriage of Newberry,* 745 S.W.2d 796, 797 (Mo.App.1988). 'In the absence of exceptional circumstances, siblings should not be separated.' *Id.* Here, the older children were living with appellant, the father, and wanted to stay there. They were considerably older and not involved in the same school or activities as the two younger children. The trial court was justified in separating the children.

*Id.* at 188.

We determine the trial court was justified in separating Shelly and James because he was a junior in high school, some four years older than Shelly who was an eighth grader. The differences in their ages, friends, and school activities are exceptional circumstances in this case.

■ Dennis next contends that Shelly's move with her mother to White Church, Missouri, from her lifelong community imposed substantial burdens on her ability to be with her friends and participate in school activities. He cites a number of cases, but none deal with a move of only twelve miles with a child still in attendance at the same school. This argument has no merit.

Next, Dennis argues the trial court acted contrary to the best interest of Shelly when the transfer of custody was denied because Karen lied to her concerning attendance at trial. He only cites *Petty v. Petty,* 760 S.W.2d 555 (Mo.App.1988). There, the mother lied under oath and acknowledged that lying is not an appropriate example to set for her children. However, Dennis forgets that evidence on whether Karen lied to Shelly was in conflict. Credibility of the witnesses and the weight to be given their testimony is a matter for the trial court. *Herbert v. Harl, supra.* Implicit in the judgment of the trial court is that no misrepresentation occurred.

■ Finally, under point one, Dennis avers the trial court acted contrary to the best interest of Shelly by refusing to transfer custody because Karen refused visitation to him. He relies on *O'Loughlin v. O'Loughlin,* 712 S.W.2d 450 (Mo.App. 1986), and *Ellis v. Ellis,* 747 S.W.2d 711 (Mo.App.1988). Both cases are factually different from the case before us. Neither case involved denial of visitation for less than thirty days subsequent to two habeas corpus proceedings.

Our power to set aside a custody award on the ground that it is against the weight of the evidence must be exercised with caution and on a firm belief that the judgment is wrong. *In Re Marriage of B___ A___ S___,* 541 S.W.2d 762, 763 (Mo.App. 1976). In this case we hold no firm belief that the judgment is wrong, and all of point one is denied.

■ We agree with the contention of Dennis in point two. In essence, Dennis states that the trial court erroneously failed to award child support to him for James.

Section 452.370, RSMo Supp.1990, governs child support awards in modification proceedings. Subsection 1 provides that a decree may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable. Subsection 2 reads:

When the party seeking modification has met the burden of proof set forth in

subsection 1 of this section, then the child support shall be determined in conformity with criteria set forth in supreme court rule 88.01.

Custody of James was transferred to Dennis (uncontested by Karen) by a showing of changed circumstances substantial and continuing in nature. Thus, Dennis was entitled to an award of child support calculated in conformity with the criteria set forth in Rule 88.01.

■ Rule 88.01 creates a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded. The presumption is rebutted if the court enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate. The trial court failed to make any finding that the amount of child support, after consideration of all relevant factors, was unjust or inappropriate. Such a finding is mandatory. See *Campbell v. Campbell*, 811 S.W.2d 504 (Mo.App.1991), where the court stated:

> An adjudication of an amount other than as calculated under Rule 88.01 is ineffective without 'a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.' That proviso is also mandatory.

*Id.* at 506.

The case must be remanded with directions to properly address the child support issue.

The judgment is affirmed denying transfer of Shelly's custody to Dennis. The judgment is reversed on the issue of child support for James. The trial court is directed to either enter an award of child support for James as mandated by Rule 88.01 using calculations pursuant to Civil Procedure Form No. 14, or enter a written finding or specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate. If necessary, the trial court may hear additional evidence concerning

child support criteria set forth in Rule 88.-01.

FLANIGAN, C.J., and MAUS, J., concur.