**Patrick Joseph McCOY, Respondent,**

v.

**Lois Brotherton RAWLINGS, Appellant.**

**No. WD 46139.**

Missouri Court of Appeals,
Western District.

March 23, 1993.

---

Terri Gonder, Columbia, for appellant.

Jean E. Goldstein, Columbia, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SPINDEN, Judge.

Lois Brotherton Rawlings appeals the trial court's decision to transfer custody of her daughter, Patricia Jo McCoy, to Patricia's father, Patrick McCoy. Rawlings contends that the court's decision that she interfered with McCoy's reasonable rights of visitation was not supported by substantial evidence appearing in the record. We remand.

Patricia Jo was born out of wedlock on April 29, 1986, while McCoy and Rawlings were living together. On January 7, 1989, McCoy and Rawlings filed a joint petition for declaration of paternity and child custody and filed a joint custody plan. On July 7, 1989, the Circuit Court of Boone County entered an order of paternity, establishing McCoy as Patricia's father. Without referring to the parties' joint custody plan or mentioning joint custody, the court awarded primary physical custody to Rawlings and reasonable visitation to McCoy. The court ordered McCoy to pay child support of $100 a month plus child care expenses of $160 a month.

On June 18, 1991, Rawlings asked the court to modify the custody order to grant her sole custody and to order McCoy to pay more child support. She alleged a substantial and continuing change of circumstances in that joint custody was not working. On July 30, 1991, McCoy filed a counter-motion in which he alleged a change of circumstances in that Rawlings interfered with visitation, maintained Patricia in an unsuitable moral atmosphere, ignored the

needs of Patricia, and behaved in an inappropriate manner in front of Patricia. After trial, the court issued an order on February 26, 1992, transferring primary custody to McCoy and ordering Rawlings to pay $344 per month in child support.

The trial court did not make specific findings of fact on the issue of custody; hence, we view the evidence in the light most favorable to the order. *M. v. M.*, 688 S.W.2d 384, 386 (Mo.App.1985). The evidence favorable to the trial court's order is set forth below.

The court heard testimony that McCoy exercised his visitation rights by insisting that he visit Patricia Jo virtually every weekend from 4:30 P.M. on Friday until 7:30 P.M. on Sunday. When he returned Patricia to Rawlings' home, he and Rawlings had arguments in front of the child, and Rawlings often provoked McCoy into losing his temper. McCoy arranged to meet Rawlings' husband at a convenience store to return Patricia Jo so he could avoid Rawlings, but Rawlings did not want this arrangement to continue. Rawlings and McCoy argued about day care, medical care, visitation schedules, and the transportation of Patricia's clothes between visits. On the advice of his counsel, McCoy carried a tape recorder when he had conversations with Rawlings to induce her to "act more civil[ly]."

The court also heard evidence that Rawlings had wide mood swings and her behavior was sometimes "erratic." Rawlings' work schedule varied. At the time of trial she was working from 1:30 P.M. to 10:00 P.M. Her work schedule was subject to change every three months to shifts from 3:30 A.M. to noon, 7:30 A.M. to 4:00 P.M., 8:30 A.M. to 5:00 P.M., or noon to 8:30 P.M. When Rawlings had to work, her husband picked up Patricia from day care and cared for her until Rawlings returned home from work. When Patricia Jo was three-years-old, Rawlings' friend, Janet Davidson, would baby-sit the child. Davidson once saw Patricia Jo place a drinking cup with a spout between her legs and do "something." She also saw her lay on a doll and try "to do things" to it. She testified that she also witnessed Rawlings' two boys and Patricia Jo watching a sexually explicit movie.

■ In child custody cases, the trial court has broad discretion. We will not set aside a custody order unless it is not supported by substantial evidence or it is against the weight of the evidence or it erroneously declares or applies the law. *Brotherton v. Lowe*, 819 S.W.2d 74, 77 (Mo.App.1991). The trial court is in a better position to judge the credibility of the witnesses and other intangibles which may not be completely revealed by the record. *K___ R___ (S___) D___ v. C___ D___ S___*, 646 S.W.2d 428, 432 (Mo.App.1983). A court may modify custody only on a showing of changed circumstances which have arisen since the prior decree or which existed at the time of the decree but were unknown to or concealed from the court. *Brand v. Brand*, 534 S.W.2d 628, 632 (Mo.App.1976). The movant has the burden of proof of establishing a change of circumstances. *Eatherton v. Eatherton*, 725 S.W.2d 125, 128 (Mo.App.1987).

■ After the trial on December 3, 1991, the trial court entered an order on December 10, 1991, which said, "The [Court] having been informed [Patricia Jo] is permitted to view pornographic films while in her mother's custody and thereafter displayed inappropriate sexual behavior, the [Juvenile Officer] is ordered to investigate and determine if cause exists for the filing [of] a petition in the Juvenile Court of this County." We presume that the trial court's reference to a pornographic film and inappropriate sexual behavior resulted from Davidson's testimony. It is the only evidence we could find which would support the court's order. We are troubled by these characterizations given the vagueness of Davidson's testimony. Although we were not present to observe the testimony, we do not agree that references to "doing something" or to "trying to do something" should be interpreted as sexual behavior; nor do we conclude from Davidson's vague description that the movie was pornographic.

■ On February 26, 1992, the court issued its final order which said:

JUVENILE OFFICERS' REPORT HAVING BEEN FILED AND CONSIDERED, THE COURT FINDS THAT [RAWLINGS] HAS INTERFERED WITH [McCOY'S] REASONABLE RIGHTS OF VISITATION AND THAT THE PARTIES RELATIONSHIP IS SUCH THAT THE CHILD'S BEST INTERESTS REQUIRE THAT HER CUSTODY BE TRANSFERRED TO [McCOY] SUBJECT TO [RAWLINGS'] REASONABLE RIGHTS OF VISITATION.

The trial court did not provide the parties a copy of the juvenile officer's report or give the parties an opportunity to respond. This was error.

Because the report was outside the record, it should not have been the basis for the trial court's order. It is axiomatic that a court has no authority to base its judgment upon any evidence not in the record. "[I]t is improper for a court to base its judgment on matters referred to as things of which the court took judicial notice, they not having been put in evidence." *State ex rel. National Lead Company v. Smith,* 134 S.W.2d 1061, 1068–69 (Mo.App.1939). We remand for the trial court to set aside its order and to reopen the record so the parties may have an opportunity to respond to the evidence in the juvenile officer's report.

We are especially compelled to this conclusion by the trial court's reference to Rawlings' interference with McCoy's right of visitation. Although the trial court's order is vague, we interpret it, as the parties do, to mean that court intended to maintain joint custody. Maintaining joint custody, however, does not solve the couple's inability to come to mutual decisions concerning Patricia Jo's care.

This leads us to one of two conclusions: Either the trial court acted on the juvenile officer's report to find a factual basis other than the couple's arguments for concluding that Rawlings had interfered with McCoy's visitation or the trial court did not intend to order a joint custody arrangement. Acting on the juvenile officer's information was improper because the report was outside the record. Given the vagueness of the trial court's orders—none referred to the parties' joint custody plan but granted primary custody to one with "reasonable rights of visitation" to the other—we cannot be certain that the court intended a joint custody arrangement. Remand of this case will give the trial court an opportunity to clarify its intent, and, given the nature of this record, we hope the parties will ask for specific findings of fact and conclusions of law pursuant to Rule 73.01. We, therefore, remand the case so the trial court can enter orders consistent with this decision.

All concur.