In re the MARRIAGE OF Karen M. LOWE and Dennis R. Lowe.

Karen M. (Lowe) BROTHERTON, Appellant,

v.

Dennis R. LOWE, Respondent.

No. 18395.

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 24, 1993.

Steven Privette, Willow Springs, for appellant.

Brad D. Eidson, Houston, for respondent.

CROW, Judge.

In this appeal we deal with events that occurred after December 28, 1990, when the trial court modified a July 5, 1988, decree dissolving the parties' marriage. The parties are Dennis R. Lowe and Karen M. (Lowe) Brotherton. For convenience, we henceforth refer to them by their respective first names.

The 1990 modification was appealed by Dennis. The outcome is reported in *Brotherton v. Lowe*, 819 S.W.2d 74 (Mo.App.S.D. 1991). The decision there left the younger of the parties' two children, Shelly Lowe (born May 25, 1977), in the primary custody of Karen. Primary custody of the parties' older child, James Lowe (born October 31, 1973), awarded to Dennis by the 1990 modification, was not in issue on appeal.

The present dispute arose when Karen, on April 27, 1992, filed a motion to change the residence of Shelly from Mountain View, Missouri, to the state of Minnesota. Karen's motion alleged her husband, Richard Brotherton,[1] had accepted employment there.

Dennis responded with a motion seeking transfer of primary custody of Shelly from Karen to him, together with child support for Shelly. Dennis' motion pled, *inter alia,* that Shelly had expressed a preference to reside with him and to remain in the school system she had attended since kindergarten.

Karen answered Dennis' motion with a request that the child support being paid her by him for Shelly be raised.

The issues were tried August 14, 1992. With commendable dispatch, the trial court filed an order August 31, 1992, which (a) transferred primary physical custody of Shelly from Karen to Dennis, (b) granted Karen six weeks' "summer visitation" with Shelly each year and one week during the Christmas holiday season, and (c) directed Karen to pay Dennis $260 per month child support for Shelly.

---

1. Karen married him December 24, 1989.      *Brotherton,* 819 S.W.2d at 76.

Karen appeals. The first of her two points relied on complains the trial court erred in awarding Dennis primary custody of Shelly.

The trial court's order contains comprehensive findings of fact, including these:

In July of 1992, the minor child, her mother, step-father and step-brother moved to the State of Minnesota from the State of Missouri. The move was against the wishes of the minor child, who had been a lifetime resident of the Mountain View, Missouri area, and had developed many friendships in that community. Both sets of grandparents, her father and brother continue to live in the Mountain View area. The minor child was active in track, volleyball, basketball and choir in the Mountain View schools.

Unfortunately, since the [1990 modification], the relationship between mother and child has continued to deteriorate. At the present time, little communication exists between Shelly and her mother, except for arguments and fights. Shelly states she has no relationship with her mother and step-father, and that she is treated like a prisoner in her own home. Since moving to Minnesota, Shelly has been denied all access to the telephone. She is not allowed to return phone calls from her father. The phone remains unhooked, and hidden in her mother's room behind a locked door. The minor child is allowed no access to her mother's room. She is not allowed to write family or friends or receive letters. [Karen] states she does not like Shelly's attitude after visiting with her father, and is punishing the child for misbehaving.

The minor child states a strong desire to live with her father in Mountain View, Missouri, and attend the Mountain View school. The minor child states her grades have deteriorated since she has been living with her mom. The minor child is adamant that she cannot and will not continue to live with her mother. She states she loves her father and wants to live with him.

. . . .

The Court finds that the move to Minnesota was primarily made to defeat and frustrate [Dennis'] visitation, and the practical effect of the move is to deprive contact between father and child. The Court finds the move to Minnesota would not be in the child's best interest. . . . [Dennis] has been active in caring for the child. He is described as a good cook and housekeeper, and a loving father. The minor child participated actively in school activities in Mountain View, and was well adjusted in the community. The minor child has many friends and family in the Mountain View community. The move to Minnesota will not provide a realistic opportunity for visitation and interaction by [Dennis] with the minor child, and the Court believes that [Dennis] is more likely than [Karen] to encourage visitation if he is awarded custody.

The trial transcript, which we have carefully read, comprises 261 pages. Additionally, ten exhibits offered by Karen and eight exhibits offered by Dennis were received in evidence. We have studied each exhibit.

The statement of facts in Karen's brief consists of four paragraphs containing a total of 28 lines. Nowhere in the statement of facts is there a page reference to the transcript. That is because the few "facts" set forth in the statement of facts occurred before the 1990 modification. No fact pertinent to the order appealed from appears in statement of facts.

Rule 84.04(c)[2] reads:

The statement of facts shall be a fair and concise statement of the facts relevant to the questions presented for determination without argument. . . .

■ The primary purpose of the statement of facts is to afford an immediate, accurate, complete and unbiased understanding of the facts of the case. *Wipfler v. Basler,* 250 S.W.2d 982, 984 (Mo.1952); *Missouri Highway and Transportation Commission v. Taylor,* 839 S.W.2d 676, 678 (Mo. App.S.D.1992). Even though Missouri appellate courts have hesitated in the past to dismiss an appeal because of an inadequate

2. Rule references are to Missouri Rules of Civil Procedure (1993).

statement of facts, such a deficiency is grounds for dismissal. *Taylor*, 839 S.W.2d at 678[2]; *Thompson v. Thompson*, 786 S.W.2d 891, 892 (Mo.App.S.D.1990).

Here, however, custody of a child is in issue. Furthermore, in the argument following the first point in her brief, Karen sets forth several facts, accompanied by transcript references. For those reasons, we shall not dismiss her appeal.

Karen's first point reads:

The trial court erred in modifying the decree of dissolution ... so as to vest primary custody [of Shelly] with Dennis ... for the reason that only fifteen months earlier the court had denied a similar motion based on similar allegations, and, in any case, ... Dennis ... failed to meet the burden of proof required in a motion to modify.

Rule 84.04(d) reads:

The points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous....

The purpose of the rule and the necessity of obeying it are explained in the leading case of *Thummel v. King*, 570 S.W.2d 679, 684–88 (Mo. banc 1978).

Karen's first point yields no clue as to wherein and why the 1990 denial of Dennis' motion for custody of Shelly constituted a defense to his 1992 motion for custody, supplies no inkling as to what the "similar allegations" were in the earlier motion, and provides no hint as to wherein and why Dennis failed to meet the burden of proof required to transfer custody. The point therefore presents nothing for appellate review. *Phillips v. Phillips*, 819 S.W.2d 413, 416[2] (Mo. App.S.D.1991); *Best v. Culhane*, 677 S.W.2d 390, 394[4] (Mo.App.E.D.1984).

However, because the best interest of a child is involved, we shall review the transfer of custody. The review standards are set forth in *Brotherton*, 819 S.W.2d at 77:

The scope of our review in this court-tried case is established by Rule 73.01(c), as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Credibility of the witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988).

A [parent] seeking change in custody of a child has the burden to show that a change has occurred in the circumstances of the child or the parent since the decree and that modification is necessary to serve the best interests of the child. *Wilhelmsen v. Peck*, 743 S.W.2d 88, 92 (Mo.App. 1987). An appellate court defers to the findings of the trial court in a matter of child custody unless firmly convinced that the welfare of the child requires some other disposition. *Hartig v. Hartig*, 738 S.W.2d 160, 161 (Mo.App.1987).

Section 452.411, RSMo Supp.1988, reads:

If either parent of a child changes his residence to another state, such change of residence of the parent shall be deemed a change of circumstances under section 452.410, allowing the court to modify a prior custody decree.

■ Citing *Smith v. Smith*, 839 S.W.2d 382, 384[2] (Mo.App.S.D.1992), Karen reminds us that to prevail on a motion to modify custody, the moving party must show a change of circumstances of the child or of the custodial parent, not the non-custodial parent, which is significant, directly affecting the welfare of the child. Karen maintains the only change in her and Shelly's circumstances since the 1990 modification was the move to Minnesota. Relying on *In re Marriage of Cornish*, 780 S.W.2d 62 (Mo.App. E.D.1989), Karen insists such change is insufficient to support transfer of custody.

■ In *Cornish*, the custodial parent (mother) was transferred by her employer from Missouri to a better job in Wisconsin. She sought modification of the existing custody order to permit her to move the parties' two children to Wisconsin with her. The

father responded with a motion seeking primary custody of the children. The trial court granted the mother's motion and denied the father's motion. The Eastern District of this Court affirmed, noting a court may permit removal of a minor child from the jurisdiction when it clearly serves the child's best interests. 780 S.W.2d at 64. Past custody of a child by the moving party and the need of the parent to move from the state are sufficient facts, if proved, to warrant permission to remove a child from the jurisdiction. *Id.* at [1].

*Cornish* does not aid Karen for three reasons. First, the children in *Cornish* were ages eight and four when the mother sought permission to move them. *Id.* at 63. Here, Shelly was fifteen and preparing to start her sophomore year in high school. Second, the trial court in *Cornish* found the mother had been an exemplary custodian of the children since the dissolution and the move to Wisconsin would benefit the children as well as the mother. *Id.* at 64. Here, as we have seen, the trial court found the relationship between Karen and Shelly had continued to deteriorate since the 1990 modification and that moving to Minnesota would not be in Shelly's best interest. Third, *Cornish* held only that where a custodial parent moves to another state, a Missouri court may permit the children to accompany the parent if the move serves the children's best interest. *Id.* *Cornish* did not hold custody cannot be changed if, considering all relevant circumstances, the best interest of the child would be served by placing custody with the parent staying in Missouri.

Karen attacks the trial court's finding that the move to Minnesota was primarily to defeat and frustrate Dennis' visitation with Shelly. Karen asserts she and her husband testified they moved because his salary would double. According to Karen, "This evidence was wholly uncontradicted."

Karen indeed testified to the above effect, but we find no such testimony by her husband. Karen's brief does not identify any page in the transcript where such testimony by him appears.

Furthermore, Karen overlooks testimony by Deborah Ann McGath, Shelly's aunt.

Asked about a telephone conversation she (Deborah) had with Karen in July, 1992, Deborah testified, "Karen [said] that the main reason they moved out of state was to take Shelly away from us and away from our influence...."

■ The trial court was presented a difficult choice. There are negative factors in Shelly living with either parent. Those regarding Dennis appear in *Brotherton*, 819 S.W.2d at 76–78: However, as noted *supra*, an appellate court defers to the findings of the trial court in a child custody case unless firmly convinced that the welfare of the child requires some other disposition. We are unconvinced Shelly's welfare requires reversal here.

■ Factors to be considered in a proceeding for change of custody include the increased age of the child, the deteriorated nature of the relationship with the custodial parent, and performance at school while living with the custodial parent. *Wilmesherr v. Wilmesherr*, 708 S.W.2d 823, 824[3] (Mo.App. E.D.1986). Those factors are significant here. While responsibility for the tense relationship between Karen and Shelly may not lie solely with Karen, the fractured bond is nonetheless a fact compellingly demonstrated by the record. Additionally, Shelly's desire to finish school with classmates she has known since childhood is readily understood. Coupled with the positive relationship she has with her grandparents in Mountain View and the testimony that Dennis is a loving father and good housekeeper, the evidence in toto supplies a sufficient basis for transfer of custody from Karen to Dennis. Karen's first claim of error is denied.

Her second point avers the trial court erred in ordering her to pay Dennis $260 per month child support in that she was unemployed at time of trial and there was no evidence of availability of employment or wage rates in her new domicile. Furthermore, says Karen, no Form 14 was filed with the trial court.

Karen testified she was employed at Southwest Mobile Systems in West Plains from November 20, 1991, until May 31, 1992, when she quit because of the move to Minne-

sota. Her rate of pay was $21,000 per year. Before that, she was a production control clerk at Mountain View Fabricating, earning between $10,000 and $11,000 annually. Karen recounted she had not looked for employment in Minnesota, but was "planning on getting out on the job market."

The trial court received as evidence copies of Dennis' 1990 and 1991 income tax returns. Dennis testified his 1992 income was "probably pretty close" to 1990 and 1991.

Neither party submitted a Civil Procedure Form No. 14[3] during trial. Before the litigants departed the courtroom, Dennis' lawyer asked about preparing one. The trial court suggested that inasmuch as child support had been placed in issue by both parties' pleadings, each party should "submit a child support guide to the Court with their suggestions." Within the deadline fixed by the court, Dennis' lawyer tendered a completed Form 14, but Karen's lawyer did not.

Dennis' Form 14 attributed potential income of $1,750 per month to Karen, based on her testimony that her last job before leaving Missouri paid $21,000 annually. Using that figure, together with income attributable to Dennis, the Form 14 submitted by him calculated Karen's child support obligation to be $263.84 per month. The order appealed from states the trial court "adopts the presumed child support amount calculated by [Dennis]." As reported earlier, the trial court ordered Karen to pay Dennis $260 per month child support.

Karen does not challenge the amount shown as Dennis' income on his Form 14. Instead, she complains it was error to impute income to her in that no evidence was presented regarding availability of employment or probable earnings in the locale to which she moved.

In *Schulze v. Haile,* 840 S.W.2d 263 (Mo. App.W.D.1992), the trial court imputed income of $3,118 per month to the noncustodial parent (father). The appellate court, after considering the father's recent work history, occupational qualifications, and the pay scale for a person with such qualifications in the community where the father lived, found no substantial evidence to support the trial court's figure. *Id.* at 265.

In any proceeding where child support is adjudicated, use of Form 14 in calculating presumed child support is mandatory. *In re Marriage of Luna,* 855 S.W.2d 483, 485[2] (Mo.App.S.D.1993); *Tuning v. Tuning,* 841 S.W.2d 264, 266–67[1] (Mo.App.S.D. 1992); *Kieninger v. Kieninger,* 836 S.W.2d 515, 517–18 (Mo.App.E.D.1992). The "Directions for Use" of Form 14 provide, in pertinent part:

> If either parent is unemployed ... child support may be calculated in appropriate circumstances based on a determination of potential income. To determine potential income, the court may consider employment potential and probable earnings level based on the parent's recent work history, occupational qualifications, prevailing job opportunities in the community....

At time of trial, Karen was residing with her husband in Monticello, Minnesota. She testified its population is "less than 5,000"; it is situated 35 to 40 miles from Minneapolis. While it is inferable Karen will be able to find employment, nothing in the record supports imputation of potential income of $21,000 per year to her.

Until she began earning that amount at Southwest Mobile Systems in November, 1991, she was a production control clerk earning half that sum. The record is bare of any evidence regarding her job skills. While she testified she has a "degree," its nature is unrevealed, as is the type of work she did at Southwest Mobile Systems. She was not asked whether similar work is available within a reasonable distance of her new home.

For the above reasons, we hold there was no substantial evidence to support the $21,000 per year potential income imputed to Karen by the trial court. Consequently, the $260 per month child support award must be reversed. Because Karen unquestionably has earning capacity, we remand the cause to

---

**3.** Civil Procedure Form No. 14 and the directions for its use appear at pages 380–84, Missouri Rules of Court (West 1993).

the trial court for a new trial on the child support issue.

This disposition makes it unnecessary to decide whether the cavalier way in which Form 14 was handled in the trial court complied with the requirements for its use.

The trial court's order of August 31, 1992, is affirmed except the portion ordering Karen to pay Dennis $260 per month child support, which is reversed. The cause is remanded to the trial court for a new trial on the child support issue. Costs of this appeal are taxed half against Karen and half against Dennis.

FLANIGAN, P.J., and PREWITT, J., concur.