David R. BUXTON, Sr., Appellant,

v.

Jennifer Lynn KANEER, Respondent.

D.R.B., Juvenile, Defendant.

No. WD 50539.

Missouri Court of Appeals,
Western District.

Aug. 15, 1995.

John Henry Edmiston, Warrensburg, for appellant.

Respondent, pro se.

Cheri C. Simpkins, Kansas City, MO, Guardian ad litem.

Before FENNER, C.J., P.J., and BRECKENRIDGE and ELLIS, JJ.

FENNER, Chief Judge.

David R. Buxton, Sr. (Father), appeals from a judgment of the trial court granting primary physical custody of his son, David R. Buxton, Jr. (David), to Jennifer Lynn Kaneer (Mother). Father contends that the trial court erred (1) in granting primary physical custody of the minor child to Mother; and (2) in ordering Father to pay $250.00 per month in child support. The judgment of the trial court is affirmed in part and reversed and remanded in part.

David R. Buxton, Jr. was born February 11, 1993. At the time of trial, David was 22 months old. Mother and Father were both seniors in high school when David was born. Mother and Father lived with Father's parents after the birth of David. However, Mother moved out shortly thereafter because of interference by the Father's mother. Mother had wanted to breastfeed David. The Father's mother interfered by feeding David formula from a bottle.

Mother moved around several times after moving out of Father's parents' house. Mother kept Father informed of her address so he could visit David. Ultimately, Mother moved back in with her parents. She has been living with them for approximately five months. Mother and David have their own room at her parents' house.

Mother has been with and cared for David since he was born. She feeds him, bathes and dresses him, takes him to the doctor, etc. There was testimony that Mother and David have a very good relationship and a strong bond. Mother exhibits that she cares a great deal for David. Mother does not have a high school degree and does not work. Her only source of income is from AFDC and food stamps. She plans on getting her G.E.D.

Father initially denied that David was his child and told Mother to get an abortion. Although he eventually acknowledged paternity, he spent very little time with David after Mother moved out of his parents' house. Father did not make regular arrangements for visitation with David until two to three months before the trial of this matter. Rather, the Father's parents arranged for visitation. The parents also picked up David and returned him at the end of the visit. As recently as June, 1993, the Father's relinquishment of parental rights was discussed with Mother.

David has a high school diploma and a position as an ironworker earning $11.44 per hour. Father has never paid any child support to Mother for the care of David. He does provide insurance at the cost of $200.00 per year, as ordered by the Department of Social Services, Division of Child Support Enforcement. He has bought David toys and a few clothes but these have remained at his parents' house. Father does have his own trailer which has a bedroom for David.

Father contended at the hearing that custody should be granted to him because he was concerned about David's welfare. Father presented evidence that David often had bruises and bumps, including a black eye that he had at the time of the trial. He was also sick for a long time with a cold. Father also presented evidence that Mother had a short temper and would throw things at Father.

Mother explained that the black eye occurred when David jumped from the sofa and hit a coffee table. Mother's mother was present when this occurred and testified that David was injured by the coffee table. On another occasion, David fell down the stairs and was bruised. David has never had any broken bones and has never been hospitalized.

As to Mother's temper, it was brought out on cross-examination that these incidents oc-

curred when Mother was in high school and pregnant, and Father was denying paternity. Father had not seen any recent outbursts of temper by Mother and had never seen Mother hit David.

As to his colds, Mother explained that David was sick. However, she did take him to several doctors who gave him medicine. Mother testified that his recovery was delayed in part because Father's parents did not return his medicine after a visit. Thus, Mother had to call the doctor and get a new prescription and David had to start taking the medicine over again. David is no longer sick.

The trial court awarded joint legal custody of the child to Mother and Father. The court granted primary physical custody to Mother with liberal visitation to Father. While the court felt it was a close case, it pointed out that the Father had not made any effort to assist Mother in raising David. The court also noted that while it is easy to sit back and point out the things that Mother has done wrong, it is not easy for a young mother to raise a child without any financial or emotional support from others, including the father.

The court ordered Mother to obtain her G.E.D. and to successfully complete a parenting skills class. It also ordered the Father to pay $250.00 per month in child support.

### Custody

■ In Point I, Father contends that the trial court erred in granting primary physical custody of David to Mother because the court's order was not supported by substantial evidence and was against the weight of the evidence. Review of this court tried case is governed by the principles set out in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court's decision must be affirmed unless there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Id.; O'Leary v. Stevenson,* 782 S.W.2d 109, 111 (Mo.App. 1989).

■ The basis for determining custody is the best interest of the child; it is immaterial to this determination that a child is born out-of-wedlock. *Harris v. Harris,* 803 S.W.2d 167 (Mo.App.1991). The trial court has broad discretion in making provision for child custody and this court will not interfere with the trial court's decree unless the welfare of the child compels such interference. *Jobe v. Jobe,* 708 S.W.2d 322, 328 (Mo.App. 1986). "Moreover, because of the trial court's unique position for determining the credibility, sincerity, character, and other intangibles of the witnesses, we presume awards of custody are made in the best interests of the children." *Gismegian v. Gismegian,* 849 S.W.2d 201, 202 (Mo.App.1993). A trial court's determination of custody is given greater deference than that given the trial court in any other type of case. *D.S.P. v. R.E.P.,* 800 S.W.2d 766, 770 (Mo.App.1990).

■ Father cites *Harris v. Harris,* 803 S.W.2d 167 (Mo.App.1991), to support his contention that the trial court should have awarded physical custody of David to him. The appellate court in *Harris* upheld an award of custody to the father of a child born out-of-wedlock based upon the mother's nomadic lifestyle and father's stability. *Id.* at 169–70. The court in *Harris* upheld an award made by the trial court following the same standard of review used in the instant case. It did not reverse an award to the mother as Father asks us to do in the instant case. There is no absolute rule to follow when determining the outcome of a custody case; each case must be examined in light of its own unique set of facts. *Fastnacht v. Fastnacht,* 616 S.W.2d 98, 100–01 (Mo.App. 1981).

Our review of the record shows no abuse of discretion on the part of the trial court. Although Mother's parenting skills appear somewhat lacking, Father's pattern of behavior demonstrates a lack of concern about David. The record indicates a bond between mother and child. The trial court indicated that it was a close case. We will not second guess the trial court as it was in a better position than we are, having had the opportunity to observe the credibility, sincerity, character, and other intangibles of the witnesses. Point I is denied.

## Child Support

In Point II Father contends that the trial court erred in ordering him to pay $250.00 per month child support because such award was beyond the pleadings. In Count I of his petition, Father asked the court to declare him to be David's father. In Count II, Father asks the court to grant him custody and "for such other and further relief that the court deems just and proper." Mother's answer did not contain a request for child support; her only request was for attorney's fees. No Form 14 appears in the record. Father argues that the trial court exceeded its jurisdiction in ordering that he pay child support.

Initially, we point out that the duty to support the child is one Father owes to David, not to Mother. It is the duty of both parents to support their minor children. *Sprague–Cappel v. Sprague*, 852 S.W.2d 361 (Mo.App.1993). The child's right to support is not in any way impaired by illegitimacy. *Payne v. Delp*, 821 S.W.2d 582 (Mo.App. 1992). The trial court, by the nature of the action before it, acted within its jurisdiction in awarding support.

This is particularly true in the instant case where the issue appears to have been tried by the implied consent of the parties. Rule 55.33(b) provides, "When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *See also Czapla v. Czapla*, 801 S.W.2d 785 (Mo.App.1991) (Court award of maintenance to wife upheld where wife did not plead maintenance or amend pleading to request maintenance). The record abounds with evidence on support related issues. Both Mother's and Father's incomes are a part of the record as is the lack of support Father has expended on the child. Father testified on direct examination that he earned $11.44 per hour and that he worked a 40 hour week. He paid $200.00 per year to have David added to his medical insurance. Father was asked by the court, "Did you ever pay her a dime in child support?" He replied, "No, sir." Father testified that he did not send the Division of Child Support Enforcement any regular monthly payments. Mother's income amounted to $234.00 per month from ADC and $212.00 per month in food stamps.

No Form 14 appears in the record. Section 452.340.7 [1] mandates the use of child support guidelines in determining the amount of support.[2] These guidelines are mandatory in all child support cases. *Sinclair v. Sinclair*, 837 S.W.2d 355, 358 (Mo. App.1992). The cause must thus be remanded to the trial court for a specific determination of the Form 14 calculation.

The judgment of the trial court is affirmed as to the issue of custody. The judgment is reversed as to the award of child support and remanded to the trial court for further proceedings not inconsistent with this opinion.

All Concur.

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

2. Rule 88.01 provides:

   When determining the amount of child support to order, a court or administrative agency shall consider all relevant factors, including:
   (a) the financial resources and needs of the child;
   (b) the financial resources and needs of the parents;
   (c) the standard of living the child would have enjoyed had the marriage not been dissolved;
   (d) the physical and emotional condition of the child; and
   (e) the educational needs of the child. There is a rebuttable presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is the amount of child support to be awarded in any judicial or administrative proceeding for dissolution of marriage, legal separation, or child support. It is sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to Civil Procedure Form No. 14 is correct of the court or administrative agency enters in the case a written finding or a specific finding on the record that the amount so calculated, after consideration of all relevant factors, is unjust or inappropriate.