THE DEPARTMENT OF PUBLIC AID *ex rel.* DEBORAH L. MASINELLI, Plaintiff-Appellee, v. JEFFREY SCOTT WHITWORTH, Defendant-Appellant (Brett Whitworth, Third-Party Defendant-Appellee).

Fourth District    No. 4—94—0523

Argued June 19, 1995.—Opinion filed June 30, 1995.

J. Richard Meno (argued), of Denby, Meno, Bloomer & Denby, of Carlinville, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Jessie A. Wang-Grimm, Assistant Attorney General (argued), of counsel), for appellee Department of Public Aid.

William A. Mudge (argued), of Lucco, Brown & Mudge Law Offices, of Edwardsville, and Erin E. Reilly (argued), for appellee Brett Whitworth.

JUSTICE GREEN delivered the opinion of the court:

This is a paternity action brought on September 1, 1988, by the Department of Public Aid (Department) on behalf of Deborah L.

Masinelli against Jeffrey Scott Whitworth, who Masinelli claimed was the father of her minor child. Jeffrey was permitted to implead his identical twin, Brett Whitworth, as a third-party defendant. After reviewing the results of blood tests and testimony of the parties, the trial court determined there was sufficient evidence to establish, by a preponderance, that Jeffrey was the biological father of the child. A judgment so finding and ordering Jeffrey to pay support for the child was entered on April 19, 1994. Jeffrey appeals, contending the trial court erred in applying the statutory presumption of paternity contained in section 11(f)(4) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/11(f)(4) (West 1992)) to him. We disagree and affirm.

The genetic evidence consisted of several sets of blood tests, the most exacting of which showed that both Jeffrey and Brett had a combined paternity index of 7,883 to 1, which means that it is 7,883 times more likely that a union between Masinelli and either Jeffrey or Brett would produce a child with the observed genetic markers than would a union between Masinelli and any randomly selected male from defendants' race.

The nongenetic evidence consisted of testimony by Masinelli that she dated Jeffrey and engaged in intercourse with him on up to six occasions roughly nine months prior to the birth of the child. Masinelli also testified she never dated Jeffrey's identical twin, Brett, and never engaged in sexual relations with him. Both men testified and denied that they engaged in sexual relations with Deborah, although each believed the other to be the father of the child.

Masinelli's sister, Angela Taylor, testified that she introduced Masinelli to both brothers and had seen Masinelli kissing Jeffrey on at least one occasion at a social gathering. However, she never observed Masinelli and Brett in a dating situation because "Brett did not like Debbie."

Both Masinelli and Angela testified that even though defendants were identical twins, the women could distinguish between the two brothers. Finally, although Masinelli testified that she had never ridden in a car with Brett, that testimony was contradicted by Brett, who indicated he had once given her a ride during which the car became stuck in a cornfield and had to be towed.

Section 11 of the Parentage Act concerning blood tests provides:

"Tests taken pursuant to this Section shall have the following effect:

\* \* \*

(3) If the blood or tissue tests show that the alleged father is not excluded and that the combined paternity index is less than 500

to 1, this evidence shall be admitted by the court and shall be weighed with other competent evidence of paternity.

(4) If the blood or tissue tests show that the alleged father is not excluded and combined paternity index is at least 500 to 1, the alleged father is presumed to be the father, and this evidence shall be admitted. This presumption may be rebutted by clear and convincing evidence." 750 ILCS 45/11(f)(3), (f)(4) (West 1992).

Both parties agree that identical twins have identical deoxyribonucleic acid (DNA) signatures or genetic markers. (See *People v. Lipscomb* (1991), 215 Ill. App. 3d 413, 418, 574 N.E.2d 1345, 1348.) As we have indicated, based upon the blood tests and because defendants are identical twins, they each had an identical paternity index of 7,883 to 1. Jeffrey claims that the court erred in applying the statutory presumption, however, because the "actual" paternity index, in Jeffrey's view, is 2 to 1 since the "universe" of putative fathers includes only Jeffrey and Brett. The State responds that the presumption was properly applied and Jeffrey failed by clear and convincing evidence to rebut it.

The paternity index involves the probability that a cross between the putative father and the mother would produce an offspring with the child's phenotypes (blood group) and the corresponding probability for a random selection of genes from the same racial male population. (*County of El Dorado v. Misura* (1995), 33 Cal. App. 4th 73, 79, 38 Cal. Rptr. 2d 908, 911.) This index is *not* the probability that the accused is the father. (*County of El Dorado*, 33 Cal. App. 4th at 79, 38 Cal. Rptr. 2d at 911; *Plemel v. Walter* (1987), 303 Or. 262, 269, 735 P.2d 1209, 1213.) A determination of the probability or likelihood of a particular person being the father of the particular child must also take into account the "soft" or nongenetic evidence in the case. Such evidence includes the access of the putative father or others to the mother as was shown here. (*County of El Dorado*, 33 Cal. App. 4th at 80, 38 Cal. Rptr. 2d at 911.) Evidence indicating that others besides the putative father had access to the mother during the relevant period decreases the probability that the putative father is the father but the paternity index of the putative father would remain the same. See *County of El Dorado*, 33 Cal. App. 4th at 80-81, 38 Cal. Rptr. 2d at 912.

Section 11 of the Parentage Act makes no reference to its operation under circumstances where the putative father has an identical twin. However, in the situation where the putative father has an identical twin and the paternity indexes are both above 500 to 1, any logical application of the section would give rise to a rebuttable presumption that one or the other of the two is the father of the child.

It has been stated that paternity probability, being a measure of

likelihood based solely on serologic information apart from any non-genetic evidence for or against paternity, is not meaningful in distinguishing between two related, nonexcluded putative fathers—the most extreme example being identical twins, for whom all genetic markers are the same. (See Terasaki, *Resolution By HLA Testing Of 1000 Paternity Cases Not Excluded By ABO Testing*, 16 J. Fam. L. 543, 549 (1977-78).) As a result, the so-called "hard" scientific blood testing could result in competing presumptions of paternity which cancel each other out, relegating the trier of fact to the "soft" evidence. (*County of El Dorado*, 33 Cal. App. 4th at 83, 38 Cal. Rptr. 2d at 914.) Thus, applying any presumption here beyond that one of the two twins was the father would have been violative of the principles of the Parentage Act and of the theories of use of serological information to help determine paternity.

■ Jeffrey's assertion that the circuit court erred in applying the presumption of section 11 when the likelihood of Jeffrey being the father was only approximately one chance in two is not an accurate analysis of the process used by the court. The court explained its decision in words as follows:

> "I am of the opinion, having reviewed the testimony that previously was presented in this case and all arguments and exhibits that were submitted to the Court, that the statute does apply and must be considered by the Court. And it's further the Court's opinion and finding that either Scott J. Whitworth [*sic*] or Brett W. Whitworth is the father of Cory Scott Masinelli.
>
> I am further of the opinion find [*sic*] that it's not possible that they're both the father of this child. I am of the opinion and find that, and I've been persuaded by the statements that have been made today and those that have been made earlier in the form of testimony and argument, that there is sufficient evidence to establish by a preponderance or greater weight of the evidence proving that Scott J. Whitworth [*sic*] is the father of Cory Scott Masinelli, and I so find."

Thus, the circuit court followed the analysis suggested by *County of El Dorado* creating a rebuttable presumption against the rest of the world that either Jeffrey or his twin was the father. The court then relied on the nongenetic evidence to conclude that, as between Jeffrey and Brett, more likely than not, Jeffrey was the father of the child.

Accordingly, having found no error in the proceedings below, the judgment of the circuit court of Macoupin County is affirmed.

Affirmed.

KNECHT, P.J., and COOK, J., concur.