**STATE of Missouri, ex rel., DEPARTMENT OF SOCIAL SERVICES, DIVISION OF CHILD SUPPORT ENFORCEMENT, and Holly Marie Adams, Petitioners–Respondents,**

v.

**Raymon MILLER, Respondent–Appellant,**

and

**Richard Miller, Respondent.**

**No. 27188.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 14, 2007.

Cameron Bunting Parker, Welch, Todd & Parker, Malden, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Jason M. Lloyd, Assistant Attorney General, Kansas City, for respondent.

PHILLIP R. GARRISON, Judge.

In this paternity action the trial court entered a judgment finding that Raymon Miller ("Appellant") was the natural father of the minor child ("K.A.A."), and that his identical twin brother, Richard Miller ("Richard") was not the natural father. The results of blood tests performed on the two brothers demonstrated that both had a 99.999% probability of being the father. The issues on this appeal relate to

whether sufficient evidence was presented to rebut the presumption, created by the blood tests, that Richard was the father. We affirm.

On September 13, 2004, Holly Marie Adams ("Mother"), individually and as next friend of K.A.A., as well as the State of Missouri through the Department of Social Services, Division of Child Support Enforcement (collectively "Plaintiffs"), filed suit against Appellant and Richard to determine the identity of the natural father and to obtain a declaration of paternity as to K.A.A., born April 12, 2004. After a bench trial, the court entered a judgment finding that Appellant was K.A.A.'s natural father. This appeal followed.

In paternity cases, as with other court-tried cases, we review pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).[1] *Robinett v. Robinett*, 770 S.W.2d 299, 301 (Mo.App. W.D.1989). Under *Murphy*, we will reverse the trial court's judgment only if no substantial evidence supports it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. 536 S.W.2d at 32. In making that review, we give substantial deference to the trial court's ability to hear the evidence and determine the credibility of witnesses. *Robinett*, 770 S.W.2d at 301. In making credibility determinations, the trial court may believe none, part, or all of a witness's testimony. *In re Marriage of Thomas*, 21 S.W.3d 168, 177 (Mo.App. S.D.2000). As a result, issues about the credibility of witnesses are for the trial court to resolve and are not matters that appellate courts can review. *Id.* In making our review, we view the evidence and all reasonable inferences

drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Blair v. Blair*, 147 S.W.3d 882, 885 (Mo. App. W.D.2004). Viewed in that light, the evidence showed the following:

Blood tests conducted on Appellant and Richard demonstrated that both had a combined paternity index of 814,445 and a probability of paternity of 99.999% with a prior probability of 0.5. The conclusion of those tests stated:

> The alleged father [Appellant], cannot be excluded as the biological father of the child [K.A.A.], because they share genetic markers. The probability of paternity is 99.999%, as compared with an untested, unrelated Caucasian man of the North American Population. [Richard] is the twin brother of [Appellant] and an alleged father of [K.A.A.]. The probability that [Appellant] is the biological father of [K.A.A.]is identical to the probability that [Richard] is the biological father. [Appellant] and [Richard] are one billion times more likely to be identical twins than to be fraternal twins.

At trial, Mother testified that K.A.A. was born approximately three and one-half weeks prior to her due date of May 1, 2004. She said that she had a sexual relationship with Appellant that began in December 2002, and ended when they had sex on August 8, 2003, one week after her last full menstrual period ended. She said that Appellant never used any kind of birth control when they had sex. She also said that she had a sexual relationship with Richard that began in 2002 and lasted until April 2003.[2] She first suspected that she

---

1. *Murphy* interpreted the provisions of Rule 73.01(c). The provisions of that rule now appear in essentially the same form in Rule 84.13(d), Missouri Rules of Civil Procedure (2005).

2. Mother, who at the time of trial was twenty-four years old, said that she had been around Appellant and Richard since she was fourteen or fifteen years old and could tell them apart.

was pregnant when she began having morning sickness around the 18th to 20th of August 2003, and made a doctor's appointment. Mother testified that she again had sexual intercourse with Richard on August 22 or 23, 2003, but that he used a condom on that occasion; she did not start her period which should have begun on August 24 or 25, 2003; she went to the doctor on August 26, 2003, at which time a urine test confirmed her pregnancy; and that type of urine test requires that the person be pregnant at least two weeks before it will provide a positive result.

■ Appellant's two points on appeal are inter-related and will be considered together. In one, he contends that the trial court erred in declaring him the father of K.A.A. because the party bringing a paternity action has the burden of proof, which is by a preponderance of the evidence, and in this case that burden of proof was not met because the undisputed evidence showed that the blood tests were non-determinative between he and Richard, and that both had sexual intercourse with Mother at or around the time of conception. In the other point, Appellant contends that the trial court erred in finding that Richard was not K.A.A.'s biological father because there was a conclusive presumption of his paternity pursuant to Section 210.822,[3] and there was no clear and convincing evidence to rebut that presumption as provided in Section 210.822.2.

The pertinent statutory provisions include Section 210.839.4, which provides, in part, that "[u]nless a presumption applies pursuant to [S]ection 210.822, the burden of proof on all issues shall be preponderance of the evidence." Section 210.822, states in pertinent part:

1. A man shall be presumed to be the natural father of a child if:

. . . .

(4) An expert concludes that the blood tests show that the alleged parent is not excluded and that the probability of paternity is ninety-eight percent or higher, using a prior probability of 0.5.

2. A presumption pursuant to this section may be rebutted in an appropriate action only by clear and convincing evidence, ... If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing the paternity of the child by another man.

As indicated earlier, blood tests in this case indicated that either Appellant or Richard was the father of K.A.A., and that the probability of that being true was equal as between the two of them. It is Appellant's position that pursuant to Section 210.822, the blood test created 'a conclusive presumption that Richard was the father of K.A.A. and there was no evidence to rebut that presumption.

*Illinois Dept. of Public Aid, ex rel. Masinelli. v. Whitworth,* 273 Ill.App.3d 156, 209 Ill.Dec. 918, 652 N.E.2d 458 (1995), was a case involving a paternity suit against two identical twin men in which the results demonstrated an equal probability that they each fathered the child in question. That case also involved a statute creating a presumption of parentage which could be rebutted by clear and convincing evidence. *Id.* at 460. The Illinois Appellate Court held that when blood tests of two identical twins produces an equal probability of fatherhood, there is a rebuttable presumption that one or the other is

___

**3.** All references to statutes are to RSMo (2000) unless otherwise indicated.

the father. *Id.* In such cases, the court said that the "so-called 'hard' scientific blood testing could result in competing presumptions of paternity which cancel each other out, relegating the trier of fact to the 'soft' evidence." *Id.* at 461. There, the "soft evidence" was that one twin had had sexual intercourse with the mother but the other had not. Id. at 459–60. The appellate court approved the trial court relying on nongenetic evidence to conclude that one of the twins was the father. *Id.* at 461.

The reasoning of *Whitworth* is persuasive. Otherwise, application of the statutory presumption from the blood tests under the facts here, without more, would result in neither brother being adjudicated K.A.A.'s father even though those same tests indicate that one of the two is the father.

Appellant draws our attention to Section 210.836(1), providing that evidence relating to paternity may include evidence of sexual intercourse between the mother and alleged father "during the possible time of conception." Continuing, he argues that Mother admitted having sexual intercourse with Richard on several occasions, specifically "at or around the time of conception." Although Mother testified that she had a sexual relationship with Richard that ended in April 2003, and was not renewed thereafter except on one occasion, to wit: August 20 or 22, 2003, Appellant emphasizes a portion of Mother's testimony that he seems to contend required the trial court to find that Mother had sexual inter-course with *both* Appellant and Richard on August 8, 2003. She had testified that she went to the rodeo in Sikeston, Missouri, on the evening of August 8, 2003, and later went to Appellant's home in Wardell, Missouri, where they had sex. During cross-examination by Appellant, Mother said she went to the rodeo alone, and that Richard was at the rodeo with a friend. She was then asked, "Did you sleep with him while in Sikeston for the rodeo?" to which she answered "yes, ma'am." She then said she went to Appellant's home where they had sex later that night or early the next morning.

In both his points on appeal, Appellant impliedly accepts August 8, 2003, as the date of conception and argues that the above evidence demonstrates that both brothers had sex with Mother on that date.[4] That, together with the identical blood test results, he argues, dictates the conclusion that plaintiffs did not meet their burden of proof and did not rebut the equal presumption that Richard was the father.

Appellant's reliance on Mother's answer to the one question referred to above as requiring the conclusion that Richard and Appellant both had sex with Mother on August 8, 2003, is misplaced because it ignores the entirety of Mother's other testimony. As indicated earlier, at other points in her testimony, Mother said that she had a full menstrual period beginning July 25, 2003; she said that on August 8, 2003, she had sex with Appellant, but not Richard; she had sex with Richard a week

---

4. Courts take judicial notice of the normal 280–day gestational period and the party having the burden of proof must present evidence to support a finding of a shorter or longer gestational period. *Robinett,* 770 S.W.2d at 304. Although Appellant does not argue that the normal gestational period would indicate an earlier date for conception than August 8, 2003, we note that Mother's testimony about her having had a full menstrual period beginning on July 25, 2003, along with her testimony that Appellant was the only person she had sex with until after the urine test indicated she would have been pregnant would have been sufficient to support a finding by the trial court that conception occurred in early August. *Id.*

and half or two weeks after she had sex with Appellant on August 8, 2003; she had morning sickness, believed she was pregnant, and made a doctor's appointment to test for pregnancy between August 18 and 20, 2003, before she had sex with Richard on August 22 or 23, 2003; Appellant did not use a condom when he had sex with Mother on August 8, 2003, but Richard did use one when he had sex with her on August 22 or 23, 2003; and a urine test administered by her doctor on August 26, 2003, not only showed she was pregnant, but also demonstrated that she had been pregnant at least two weeks.

As indicated earlier, the trial court is the judge of credibility and was entitled to believe all, part or none of a witness's testimony, and we are to review the evidence and inferences in the light most favorable to the judgment and disregard evidence and inferences to the contrary. In addition, we note that the record does not indicate that findings of fact and conclusions of law were requested or entered by the trial court. Accordingly, all fact issues are to be interpreted as having been found in accordance with the result reached. *Gerecke v. Gerecke*, 954 S.W.2d 665, 668 (Mo.App. S.D.1997).

Based on the above, Appellant's points are denied. The judgment of the trial court is affirmed.

BATES, C.J., and LYNCH, concur.